**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARIA RAFAELANO,
              *Petitioner-Appellant,*

v.

AARON G. WILSON, District
Director of Bureau of Immigration
and Customs Enforcement; TOM
RIDGE, Secretary of Department of
Homeland Security; ALBERTO R.
GONZALES, Attorney General,
              *Respondents-Appellees.*

No. 05-35025

D.C. No.
CV-03-02647-RSL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, Chief District Judge, Presiding

Argued and Submitted
January 23, 2006—Seattle, Washington

Filed December 20, 2006

Before: Johnnie B. Rawlinson and Richard R. Clifton,
Circuit Judges, and Consuelo B. Marshall,* District Judge.

Opinion by Judge Clifton;
Dissent by Judge Rawlinson

*The Honorable Consuelo B. Marshall, Senior United States District
Judge for the Central District of California, sitting by designation.

## COUNSEL

Robert Pauw (argued), Gibbs Houston Pauw, Seattle, Washington, for the petitioner-appellant.

John McKay, United States Attorney, Christopher L. Pickrell, Assistant United States Attorney (argued), Seattle, Washington, for the respondents-appellees.

## OPINION

CLIFTON, Circuit Judge:

When Congress passed the REAL ID Act of 2005, it provided that the Act's provisions would be effective immediately and would apply retroactively to cases then pending in the courts. Among the provisions made immediately applicable was the elimination of district court habeas corpus jurisdiction under 28 U.S.C. § 2241 for claims by aliens seeking to avoid deportation or removal from the United States.[1]

---

[1]The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") altered some of the terminology used in the immigration field. The process called "deportation" was generally replaced by "removal," a form of proceeding which also covers the process previously called

Review of such orders was placed exclusively in the courts of appeals, by way of petitions for review. Our court has concluded that habeas petitions on appeal from district court decisions that were pending before us when the REAL ID Act was enacted would be treated as timely-filed petitions for review from the BIA. *See Alvarez-Barajas v. Gonzales*, 418 F.3d 1050, 1052-53 (9th Cir. 2005).

This case presents a variation of that situation. Petitioner Maria Rafaelano alleges that the government is seeking to expel her from the United States without a valid order of deportation. She acknowledges that an immigration judge ("IJ") granted her voluntary departure in 1995 by means of an order that stated that if she did not voluntarily depart from the United States within the following year, she was ordered to be deported (the "1995 Order"). She contends, however, that the 1995 Order never converted into a final order of deportation because she did depart from the United States within the one-year time period, albeit not for very long. The Board of Immigration Appeals ("BIA") has never reviewed her case, because neither Rafaelano nor the government appealed the 1995 Order to the BIA. She presented her current claim to the district court in a habeas petition, which the district court denied, and she then appealed to this court.

Following *Alvarez-Barajas*, we treat that appeal as if it were a petition for review timely filed directly in this court. Because the district court's habeas jurisdiction was eliminated by the REAL ID Act, we are precluded from relying upon the record developed by the district court. As a result, we have no

---

"exclusion." *See Kalaw v. INS*, 133 F.3d 1147, 1149 n. 2 (9th Cir. 1997). There are important differences between the two processes, but they do not matter in this case. Because the order at issue here was rendered prior to the enactment of IIRIRA and provided for "deportation," we will generally use that term throughout our discussion. As discussed below, the relevant changes resulting from the REAL ID Act apply to both orders of deportation and orders of removal.

record from which we can determine whether the 1995 Order did convert into a deportation order. That appears, in any event, to be a factual decision properly assigned to the executive agency in the first instance. Thus, we grant the petition for review and transfer the matter to the agency for further proceedings.

## I.  Background

Rafaelano, a citizen and native of El Salvador, entered the United States in 1988. In May 1990, she was arrested by the Border Patrol and was granted administrative voluntary departure, which required her to leave the United States before June 9, 1990. It is not clear whether or not she did. In July 1992, Rafaelano was detected in the United States a second time. She was again granted administrative voluntary departure, this time requiring that she depart by August 5, 1992. Again, we do not know whether Rafaelano left during that time period. If she did, however, she did not remain outside of the United States for long.

Also in July 1992, Rafaelano married Eliseo Hercules, then a U.S. lawful permanent resident. Hercules filed an I-130 Petition for Alien Relative on Rafaelano's behalf in September 1993. The petition was approved later that year. The couple now has three minor children, all of whom are U.S. citizens.

In June 1995, after the vehicle in which she was traveling was stopped for a traffic violation, Rafaelano was again detected in this country and placed in deportation proceedings. She was charged with entering the United States without inspection. After a hearing, the IJ entered the 1995 Order on September 21, 1995, granting Rafaelano voluntary departure in lieu of deportation, permitting her to depart on her own within one year, or by September 21, 1996. It also provided that if she failed to depart by that date, the right to depart voluntarily would be withdrawn and instead an order of deporta-

tion would automatically become effective.² Neither Rafaelano nor the government sought BIA review of the 1995 Order.

The parties dispute whether Rafaelano actually departed the United States during this one-year period. Rafaelano maintains that she left several times, at least once in early 1996, on brief social and shopping trips to Canada. Since she allegedly departed the United States, albeit only for a brief time, Rafaelano argues that the departure requirement was fulfilled and therefore the 1995 Order did not convert into a deportation order. The government contends, however, that Rafaelano did not depart during the relevant period, so a final order of deportation against her became effective in September 1996 and remains outstanding.

In 1998, Rafaelano's husband became a U.S. citizen. Three years later, Rafaelano filed an I-485 adjustment of status application based on her husband's citizenship status. In March 2003, Rafaelano attended an interview before an immigration officer regarding her I-485 application. While Rafaelano alleges that she has never received a decision on her I-485 application, the government contends that the application was denied.

---

²Specifically, the 1995 Order stated, in relevant part:

It is HEREBY ORDERED that the respondent be GRANTED voluntary departure in lieu of deportation, without expense to the Government on or before 9/21/96 or any extensions as may be granted by the District Director, Immigration and Naturalization Service, and under whatever conditions the District Director may direct.

It is FURTHER ORDERED that if respondent fails to depart as required, the above order shall be withdrawn without notice or proceedings and the following order shall thereupon become immediately effective: respondent shall be deported to El Salvador on the charge(s) in the Order to Show Cause.

In August 2003, the Department of Homeland Security ("DHS")[3] issued and served upon Rafaelano a "bag and baggage" departure letter[4] and warrant of deportation. These documents, issued pursuant to the 1995 Order, directed Rafaelano to report on a specified date for immediate departure to El Salvador. The notice also precluded further administrative relief, stating that "review of your file indicates there is no administrative relief which may be extended to you, and it now incumbent upon this Service to enforce your departure from the United States."

Rafaelano reported as directed, but before doing so, she filed in district court a petition for habeas corpus under 28 U.S.C. § 2241 contesting the departure order. In her habeas petition, Rafaelano argued, among other things, that because she had departed the United States prior to September 21, 1996, the portion of the 1995 Order providing for deportation did not become effective and therefore could not be enforced against her. The district court granted Rafaelano a stay of deportation pending further proceedings, and she was released from DHS custody.

---

[3]When Rafaelano's immigration proceedings commenced the relevant agency was the Immigration and Naturalization Service ("INS"). The INS officially ceased to exist on March 1, 2003, and its functions were transferred to the Department of Homeland Security.

[4]Rafaelano's bag and baggage letter noted her deportability and provided instructions regarding her scheduled August 28, 2003, deportation:

> As you know, following a hearing in your case you were found deportable and the hearing Officer has entered an order of deportation. . . . [I]t is now incumbent upon this Service to enforce your departure from the United States. Arrangements have been made for your departure to El Salvador on 8/28/2003 from Seattle Washington VIA COMMERCIAL TRANSPORTATION. You should report to a United States Immigration Officer at . . . 9:30 a.m. on 8/28/2003. You should be completely ready for deportation. At the time of your departure . . . you will be limited to 44 (forty-four) pounds of baggage.

Soon thereafter, a magistrate judge conducted an evidentiary hearing on the arguments raised in the habeas petition and issued proposed findings of fact and conclusions of law, which were subsequently adopted by the district court. The court dismissed Rafaelano's petition, holding that Rafaelano did not depart the United States prior to September 21, 1996, and was therefore subject to an effective order of deportation. Rafaelano then appealed to this court.

## II. Discussion

This court reviews *de novo* questions of law, including due process challenges to immigration decisions and statutory interpretation questions. *Perez-Gonzalez v. Ashcroft,* 379 F.3d 783, 786 (9th Cir. 2004); *Padilla v. Ashcroft,* 334 F.3d 921, 923 (9th Cir. 2003).

### A. Jurisdiction

This case arrived in our court on appeal from the district court's denial of the habeas petition in December 2004. The jurisdictional landscape has changed significantly since that time, however.

**[1]** Specifically, while this case was pending before our court, Congress enacted the REAL ID Act of 2005. Pub. L. No. 109-13, 119 Stat. 231 (May 11, 2005). The Act intended to "streamline what Congress saw as uncertain and piecemeal review of orders of deportation, divided between the district courts (habeas corpus) and the courts of appeals (petitions for review)" by effectively "limit[ing] all aliens to one bite at the apple with regard to challenging an order of deportation." *Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005). This goal was accomplished by, among other statutory changes, granting courts of appeals exclusive jurisdiction to review challenges to deportation orders:

> Notwithstanding any other provision of law . . . *a petition for review filed with an appropriate court of*

> *appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal* entered or issued under any provision of this chapter . . . .

8 U.S.C. § 1252(a)(5) (enacted by REAL ID Act § 106(a)(1)(B)) (emphasis added). The Act eliminated the role of the district courts by eliminating habeas jurisdiction over such orders:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28, or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9) (amended by REAL ID Act § 106(a)(2)); *see Alvarez-Barajas*, 418 F.3d at 1052.

These judicial review provisions apply immediately to cases pending on the date of enactment, and Rafaelano's habeas petition is among those affected by the Act. Although the statute, as quoted above, generally refers to an "order of removal," these changes also clearly apply to an order of "deportation." Section 106(b) of the REAL ID Act states explicitly that the amendments "shall apply to cases in which the final administrative order of removal, *deportation*, or exclusion was issued before, on, or after the date" the statute was enacted. (Emphasis added.) Section 106(d) states that notwithstanding any other provision of law, including any habeas

corpus statute, a petition for review to the court of appeals "shall be the sole and exclusive means for judicial review of an order of *deportation*" under the pre-IIRIRA immigration statute. (Emphasis added.) *See also* REAL ID Act of 2005, § 106(c) (providing for transfer of any habeas corpus case challenging, among other things, an order of deportation that is pending in the district court on the date of enactment to the court of appeals for treatment as a petition for review).

**[2]** The jurisdictional provisions of 8 U.S.C. § 1252 apply to "all questions of law and fact . . . *arising from any action taken or proceeding brought to remove an alien* from the United States," so judicial review of claims arising from such actions is governed exclusively by that section. 8 U.S.C. § 1252(b)(9) (emphasis added). Rafaelano does not challenge the 1995 Order itself, but rather contests the action the government intends to take to remove or deport her from the United States. Since her petition, in its entirety, resulted from the government's effort to expel her from the United States, her claim lies within the purview of 8 U.S.C. § 1252, including the changes made by the REAL ID Act.

**[3]** We have decided that habeas petitions on appeal from district court decisions that are now pending before us will be treated as timely-filed petitions for review from the BIA. *Alvarez-Barajas*, 418 F.3d at 1053 ("[W]e hold that [the petitioner's] habeas petition should be construed as if it were a timely filed petition for review with this court . . . . Any other interpretation of the REAL ID Act would create an absurd result where the circuit courts would lack jurisdiction to review habeas petitions by aliens that were pending before the circuits when the REAL ID Act passed, but would allow such review if the petition was still pending before a district court."); *see also Martinez-Rosas v. Gonzales*, 424 F.3d 926, 928-29 (9th Cir. 2005).

**[4]** Thus, although the district court properly exercised jurisdiction when Rafaelano's habeas petition was before it,

such habeas jurisdiction has been eliminated. Accordingly, we treat the habeas petition as if it were a timely-filed petition for review filed with this court in the first instance.

**[5]** We clearly have jurisdiction over the claim made by Rafaelano, now taken to be in the form of a petition for review. Section 106(a)(1)(A)(iii) of the REAL ID Act, added the following provision to 8 U.S.C. § 1252:

> Nothing in . . . any . . . provision of this Chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D). In arguing that the 1995 Order never became a deportation order, Rafaelano has undoubtedly raised a constitutional due process argument, that it would violate due process for the government to expel her from the United States without a valid and effective deportation order. Accordingly, under subsection (a)(2)(D), Rafaelano's claim is entitled to review by us.

## B. Subject of Review

**[6]** Treating Rafaelano's habeas petition as a petition for review presents us with a unique complication that this court has not yet faced. When converting habeas petitions into petitions for review, we have consistently reviewed the administrative record and applicable BIA decision, rather than those of the district court. Our case law explicitly precludes us from reviewing the district court decision. Under 8 U.S.C. § 1252(b)(4)(A), the district court record and proceedings are treated as if non-existent. *See* 8 U.S.C. § 1252(b)(4)(A) ("[T]he court of appeals shall decide the petition [for review] only on the administrative record on which the order of

removal is based."); *Alvarez-Barajas*, 418 F.3d at 1053 ("The conversion, however, changes the decision we review, and we now review the BIA's decision, not the district court's orders."); *see also Bonhometre*, 414 F.3d at 446 ("[W]e will consider the District Court's opinion to be non-existent, and will address the procedural due process claims raised by [the petitioner] in his opening brief to the District Court as if they were raised in a petition for review before us in the first instance."); *Cordes v. Gonzales*, 421 F.3d 889, 892 (9th Cir. 2005). Similarly, we apply the standards of review and jurisdictional scope of petitions for review, rather than those of habeas petitions. Thus, for all practical purposes, such habeas petitions are treated, in their entirety, as timely-filed petitions for review.

**[7]** Until now, this transition has been relatively seamless. In every case in which we have converted a pending habeas petition into a petition for review under the REAL ID Act, the petitioner had previously appealed to the BIA and we were thereby able to review the BIA's decision and factual findings. Here, however, we have neither a BIA decision nor a comprehensive administrative record to review. Neither Rafaelano nor the government contested or sought BIA review of the 1995 Order. Her current claim centers on something entirely different. Instead, Rafaelano argues that she timely departed under, and thereby fulfilled, the requirements of the 1995 Order. No further proceedings occurred until 2003, when Rafaelano received a notice barring any further administrative review. Thus again, her case did not — and by the terms of the 2003 notice, could not — continue to the BIA.

**[8]** We cannot resolve the issues by relying solely on the existing administrative record, because resolution of the issues requires determinations of fact that have not been made. Specifically, resolution of Rafaelano's claim requires a factual determination regarding whether she left the United States during her 1995-96 voluntary departure period. If

Rafaelano did depart, she is not subject to an effective depor-
tation order.[5] If Rafaelano did not depart, however, she
remains subject to an outstanding final order of deportation.
As discussed above, even though a magistrate judge has
already conducted a comprehensive evidentiary hearing on
these contested factual issues and prepared thorough proposed
findings of fact and conclusions of law, which were adopted
by the district court in denying the habeas petition, we cannot
provide these factual findings any deference or regard.

[9] Accordingly, we are left in a situation where we cannot
review the decision of the district court and yet have no BIA
decision to review nor any administrative record regarding the
relevant factual issue: whether Rafaelano departed the country
during the one-year period up to September 21, 1996. Further,
we cannot adjudicate Rafaelano's claims in the first instance,
as our review is generally limited to what is contained in the
administrative record. Absent such a record, we are unable to
resolve the contested factual accounts which form the basis of
the issues now before us. *See Fisher v. INS*, 79 F.3d 955, 963
(9th Cir. 1996) (en banc); *see also* 8 U.S.C. § 1252(b)(4)(A)

---

[5]The government has not contested the legal premise of Rafaelano's
argument, that a departure during the one-year period prior to September
21, 1996, even if it was only brief, satisfied the voluntary departure
requirement such that the deportation order did not become effective.

The laws and procedures governing voluntary departure have changed
significantly since 1995, when Rafaelano was granted such relief, such
that this situation is unlikely to arise under existing law. For example,
Congress has since enacted a reinstatement provision applicable to aliens
who have been granted voluntary departure, which reinstates prior orders
of removal upon the alien's illegal reentry into the United States. *See* 8
U.S.C. § 1231(a)(5) ("If the Attorney General finds that an alien has reen-
tered the United States illegally after having been removed or having
departed voluntarily, under an order of removal, the prior order of removal
is reinstated from its original date and is not subject to being reopened or
reviewed, the alien is not eligible and may not apply for any relief under
this chapter, and the alien shall be removed under the prior order at any
time after the reentry."). The government has not argued that this provi-
sion, or any similar or predecessor provision, applies to Rafaelano.

("[T]he court of appeals shall decide the petition only on the administrative record on which the order of removal is based."); *Azanor v. Ashcroft*, 364 F.3d 1013, 1021 (9th Cir. 2004) ("[W]e must decide whether to grant or deny the petition for review based on the Board's reasoning rather than our independent analysis of the record.").

**[10]** As noted earlier, if Rafaelano's 1995 voluntary departure order did not convert into a deportation order — which we cannot determine through the existing record — she has presented a constitutional due process argument deserving of review and potential remedy. We are not equipped or permitted to provide this review ourselves. In light of these unusual circumstances, we find it necessary and appropriate to transfer this matter to the BIA to permit the executive agency to consider the contested issues and conduct any necessary fact-finding. *See INS v. Ventura*, 537 U.S. 12, 16 (2002) (quoting *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985)) ("A court of appeals 'is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.' . . . Rather, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.' "). Considering the case's current procedural posture and the need for fact-finding, the agency is best suited to make this determination in the first instance. *See Gonzales v. Thomas*, 126 S.Ct. 1613, 1615 (2006); *Ventura*, 537 U.S. at 17 ("The agency can bring its own expertise to bear upon the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, though informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law provides."). To be sure, it may seem a bit unusual to transfer the matter to the BIA when it has never been before the Board, but the Board is our court's usual point of contact with the relevant executive agency and thus seems to be the logical place for us to direct it.[6] We infer such deference to the executive agency to

---

[6]That does not mean that the BIA itself is expected to conduct any necessary factfinding. The BIA serves an appellate function and does not cus-

be the intent of the immigration laws generally and the REAL ID Act in particular.

## III. Conclusion

We conclude that we must transfer this matter to the BIA to determine whether the 1995 Order became an effective order of deportation because Rafaelano failed to depart the United States on or before September 21, 1996.

**PETITION FOR REVIEW GRANTED; MATTER TRANSFERRED TO THE BOARD OF IMMIGRATION APPEALS.**

---

RAWLINSON, Circuit Judge, dissenting:

I respectfully dissent. I agree that this case has come to us in a way that presents a procedural conundrum. However, I do not agree that we may resolve our dilemma by transferring this petition to the Board of Immigration Appeals (BIA).

The BIA has issued no decision on the Petitioner's claim that she was illegally removed because she departed the United States in accordance with the grant of voluntary departure. I agree with the majority that the lack of a decision by the BIA results in *de novo* review by this court. However, I

---

tomarily engage in factfinding. It does, though, possess the power to remand any and all proceedings to an IJ or to the relevant executive agency, now within the Department of Homeland Security, for further factfinding. See 8 C.F.R. § 1003.1(d)(3)(iv) (2006) ("If further factfinding is needed in a particular case, the Board may remand the proceeding to the immigration judge or, as appropriate, to the Service."). The BIA may be better equipped than we are to determine how the required facts can best be determined within the executive branch, so we will direct the matter there.

part company with the majority's conclusion that our *de novo* review consists of transferring the matter to the BIA. In my view, *de novo* consideration requires us to apply governing law to the facts of the case. *See Swinton v. Potomac Corp.*, 270 F.3d 794, 817 (9th Cir. 2001); *see also Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006) (defining *de novo* review to mean that this court "review[s] the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered") (citation omitted). Admittedly, in this case the facts were not developed before the BIA, and we cannot rely on the district court's factual findings, *see Alvarez-Barajas v. Gonzales*, 418 F.3d 1050, 1053 (9th Cir. 2005). However, that does not mean that we are without recourse in performing our required review.

Rule 48 of the Federal Rules of Appellate Procedure specifically provides for the appointment of a special master "to recommend factual findings and disposition . . ." Fed. R. App. P. 48(a). The rule provides in pertinent part:

> **(a) Appointment; Powers.** A court of appeals may appoint a special master to hold hearings, if necessary, and to recommend factual findings and disposition in matters ancillary to proceedings in the court . . . .
>
> . . .
>
> (b) **Compensation.** If the master is not a judge or court employee, the court must determine the master's compensation and whether the cost is to be charged to any party.

It could be argued that referral of this matter would not comport with the language of the rule that refers to "ancillary matters." However, the Advisory Committee Notes clarify this point, stating that:

. . . There are instances when the question before a court of appeals requires a factual determination . . . .

Ordinarily when a factual issue is unresolved, a court of appeals remands the case to the district court or agency that originally heard the case . . . However, *when factual issues arise in the first instance in the court of appeals* . . . it would be useful to have authority to refer such determinations to a master for a recommendation.

Fed. R. App. P. 48, Advisory Committee Notes, 1994 Amendments (emphasis added).

I read Rule 48 as authorizing us to appoint a special master, including a magistrate judge, *see* Fed. R. App. P. 48(b), to "recommend factual findings and disposition" in this matter. Fed. R. App. P. 48(a). I am aware of *no* authority that would permit us to satisfy our obligation to conduct a *de novo* review by transferring this petition to the BIA, and the majority opinion cites none. Indeed, the cases cited by the majority refer to a remand to the BIA, rather than a transfer. *See INS v. Ventura*, 537 U.S. 12, 15-16 (2002) (discussing remand when the Court of Appeals is "*review*[*ing*] *a decision of the BIA*") (emphasis added); *see also Gonzales v. Thomas*, 126 S. Ct. 1613, 1614-15 (same). A remand is not appropriate in this case because the function of a remand is to return a case to the decisionmaker to permit that decisionmaker to correct an error, or otherwise perform an adjudicatory function that was neglected or overlooked. *See N.L.R.B. v. Enterprise Ass'n of Steam Pipefitters,* 429 U.S. 507, 522 n.9 (1977); *see also* Black's Law Dictionary 1319 (8th ed. 1999) (defining "remand" as: "[t]o send (a case or claim) *back to the court or tribunal from which it came* for some *further* action.") (emphasis added).

Without citing any supporting authority, the majority blithely transfers this case to the BIA for initial consideration,

even though the BIA performs an appellate function rather than a factfinding one. *Matter of Fedorenko*, 19 I. & N. Dec. 57, 74 (BIA 1984) ("The Board is an appellate body whose function is to review, not to create, a record.") (citation omitted); *see also* 8 C.F.R. § 1003.1(d)(1) (designating the BIA's function as an appellate body) and (d)(3)(i) ("The Board will not engage in de novo review of findings of fact determined by an immigration judge.").

I cannot agree that an unauthorized transfer to the BIA is appropriate. Rather, I would appoint the magistrate judge who prepared the report and recommendation as a special master in this case, and have her submit her findings and recommendations directly to this Court pursuant to Fed. R. App. P. 48. We would then be able to conduct *de novo* review, using the magistrate judge's report as the starting point.

Because the majority opinion transfers this petition to the BIA without authority to do so, I respectfully dissent.