*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0329p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

VINCENT LACEY,

*Petitioner,*

*v.*

No. 06-3180

ALBERTO GONZALES, Attorney General,

*Respondent.*

On Petition for Review of an Order of Removal
by the Secretary of the Department of Homeland Security.
No. A99 101 523.

Submitted: March 9, 2007

Decided and Filed: August 21, 2007

Before: MOORE and GIBBONS, Circuit Judges; SARGUS, District Judge.[*]

---

## COUNSEL

**ON BRIEF:** Elliott Ozment, Nashville, Tennesee, for Petitioner. Gjon Juncaj, Emily A. Radford, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

## OPINION

---

KAREN NELSON MOORE, Circuit Judge. Petitioner Vincent Lacey ("Lacey"), a native and citizen of the United Kingdom ("UK"), petitions this court to vacate the removal order entered against him and remand his case to the Department of Homeland Security ("DHS") for an administrative hearing. Lacey argues that the agency violated his procedural due process rights by denying him an administrative hearing prior to denying his application for an adjustment of status and entering the removal order. For the reasons set forth below, we **DISMISS** Lacey's petition for want of jurisdiction.

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

## I. BACKGROUND

### A. The Visa Waiver Program

The Visa Waiver Program ("VWP") was created pursuant to section 217 of the Immigration and Nationality Act ("INA") (codified at 8 U.S.C. § 1187), which authorizes the Attorney General and the Secretary of State "to establish a program . . . under which the requirement of [a visa] may be waived by the Attorney General, in consultation with the Secretary of State . . . , in the case of an alien who meets [certain statutory] requirements . . . ." 8 U.S.C. § 1187(a). It "permits [eligible] nationals from designated countries to apply for admission to the United States for 90 days or less as non-immigrant visitors for business or pleasure without first obtaining a nonimmigrant visa." U.S. Customs and Border Protection ("CBP"), *Overview of the Visa Waiver Program (VWP)*, http://www.cbp.gov/xp/cgov/travel/id_visa/visitors_us/vwp/vwp.xml (last visited June 25, 2007).

The authorizing statute imposes upon every participating alien a reciprocal waiver requirement:

> (b)  Waiver of rights
> An alien may not be provided a waiver under the program unless the alien has waived any right—
> (1)  to review or appeal under this chapter of an immigration officer's determination as to the admissibility of the alien at the port of entry into the United States, or
> (2)  to contest, other than on the basis of an application for asylum, any action for removal of the alien.

8 U.S.C. § 1187(b). The practical effect of this reciprocal-waiver requirement is that a VWP alien who is found to be removable is not generally entitled to judicial review prior to deportation. Indeed, Department of Homeland Security ("DHS") regulations expressly provide for such immediate removal without review:

> An alien who has been admitted to the United States under the provisions of section 217 of the Act and of this part who is determined by an immigration officer to be deportable from the United States . . . shall be removed from the United States to her or his country of nationality or last residence.  Such removal shall be determined by the district director who has jurisdiction over the place where the alien is found, and shall be effected without referral of the alien to an immigration judge for a determination of deportability, except that an alien admitted as a [VWP] visitor who applies for asylum in the United States must be [referred to an immigration judge for a determination of deportability].

8 C.F.R. § 217.4(b)(1).  The reciprocal waiver usually cannot be withdrawn during an alien's authorized stay, as a VWP alien may not apply to adjust his or her status to that of a permanent resident unless he or she is an immediate relative[1] of a U.S. citizen.  8 U.S.C. § 1255(c)(4).

---

[1] "Immediate relatives" are defined, in relevant part, as "the children, spouses, and parents of a citizen of the United States."  8 U.S.C. § 1151(b)(2)(A)(i).

**B.  Factual Background**

Lacey entered the United States without a visa on August 7, 2003.  Shortly before his transatlantic flight landed in Chicago, Lacey filled out an I-94W form and was thereby granted entry to the United States for ninety days under the VWP.

Three days before the expiration of his ninety-day authorized stay, Lacey married Jacqueline Darnell ("Darnell"), a United States citizen.  Several months later, in April 2004, Darnell filed an I-130 Petition, seeking Immediate Relative Status for Lacey.  During the same month, Lacey himself filed an I-485 Application for Adjustment of Status, seeking permission to remain in the United States as a permanent resident pursuant to 8 U.S.C. § 1255.  The United States Citizenship and Immigration Services ("USCIS") approved Darnell's I-130 petition, thereby recognizing that the couple's marriage was valid.  *See Almario v. Att'y Gen.*, 872 F.2d 147, 149 (6th Cir. 1989).

On January 19, 2006, however, an agent from the DHS's Bureau of Immigration and Customs Enforcement ("ICE") arrested Lacey at his home and presented him with a USCIS decision, dated November 7, 2005, denying his application for an adjustment of status, on the ground that he was ineligible for such adjustment because had been convicted of drug offenses and crimes of moral turpitude in the UK.  Lacey was also issued a Notice of Intent to Deport, which stated that he had, by signing the Form I-94W, waived his right to contest deportability before an administrative officer or a judge.  The Notice of Intent to Deport stated that Lacey was being deported for having overstayed his authorized ninety-day visitation period.[2]

On February 8, 2006, Lacey filed a petition for review in this court and moved for a stay of removal pending the resolution of the petition.  On February 14, 2006, Respondent Alberto Gonzales, Attorney General of the United States ("Respondent"), moved to dismiss in part Lacey's petition for review and opposed Lacey's stay request.  The following week, Respondent moved to supplement his response to Lacey's motion for a stay with a copy of the I-94W form signed by Lacey.  Panels of this court deferred a decision concerning the addition to the record of the I-94W form[3] and denied both Lacey's request for a stay of removal and (without prejudice to refiling) Respondent's motion to dismiss.  Respondent now asks us to dismiss Lacey's petition for want of subject-matter jurisdiction.

## II.  ANALYSIS

**A.  Standard of Review**

"We review de novo questions of subject matter jurisdiction." *Bauer v. RBX Indus., Inc.*, 368 F.3d 569, 578 (6th Cir. 2004).  "The party opposing dismissal has the burden of proving subject matter jurisdiction." *GTE North, Inc. v. Strand*, 209 F.3d 909, 915 (6th Cir.), *cert. denied*, 531 U.S. 957 (2000).

**B.  Lacey's Claims**

Lacey argues that we have jurisdiction over his claims, notwithstanding his participation in the VWP, because Respondent violated his due process rights by (1) ordering him removed without

---

[2] We note that—contrary to Lacey's argument—Lacey was not ordered removed on the basis of his prior foreign convictions.  Rather, those convictions were the reason for the *denial of his application for adjustment of status*.

[3] Although Lacey opposes the inclusion of the I-94W form in the record, it is undisputed that Lacey entered the United States pursuant to the VWP.  Accordingly, the form itself is unnecessary to the resolution of Lacey's petition, and we therefore deny the motion as moot.

a hearing and (2) denying him a hearing on his application for an adjustment of status. Respondent contends, however, that because VWP participants have no right to raise such challenges to orders of removal, we possess jurisdiction only to determine whether Lacey in fact entered the country (as he undisputedly did) pursuant to the VWP.

It is, of course, "familiar law that a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002). Ordinarily, due to the reciprocal-waiver requirement, federal courts lack jurisdiction over non-asylum-based, due-process challenges to the removal of a VWP alien.[4] *See Handa v. Clark*, 401 F.3d 1129, 1133-35 (9th Cir. 2005) ("When the government decides to remove a VWP alien, the alien has already waived the right to dispute or litigate the removal . . . . Requiring a hearing before an [immigration judge ("IJ")] would make little sense . . . ."); *Nose v. Att'y Gen.*, 993 F.2d 75, 80 & nn. 9-10 (5th Cir. 1993) ("Because [8 U.S.C. § 1187(b)] unambiguously states that a [VWP] alien may only apply for asylum relief as a means of contesting deportation, we conclude that § 1187(b) forbids Nose from applying for other forms of relief from deportation.") (footnote omitted)).

That an alien participating in the VWP is not entitled to judicial review is even more obvious when, as in this case, the alien has violated the terms of his visa waiver by remaining in the United States after the expiration of his authorized stay. *See Ferry v. Gonzales*, 457 F.3d 1117, 1127-28 (10th Cir. 2006) ("Indeed, the regulations classify an alien who was admitted to the VWP and has overstayed his visa as an alien not entitled to removal proceedings under . . . the Act.") (internal quotation marks and brackets omitted) (quoting 8 C.F.R. § 1208.2(c)(1)(iv)). Lacey contends, however, that his application for an adjustment of status invested him with due-process rights that he would not otherwise have possessed, thereby conferring upon us subject matter jurisdiction over his petition.

"'Adjustment of status' is a form of relief that allows a deportable alien who would be admissible to the United States if he were seeking to enter the country to adjust his status to that of an alien seeking entry." *Drax v. Reno*, 338 F.3d 98, 113 (2d Cir. 2003). The Attorney General may, "in his discretion and under such regulations as he may prescribe," adjust an alien's status to that of a lawful permanent resident if "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a).

Federal regulations prohibit aliens from directly appealing denials of adjustment of status, directing instead that such challenges must be raised, if at all, in removal proceedings. 8 C.F.R. § 245.2(a)(5)(ii) ("No appeal lies from the denial of an application [for adjustment of status] by the director, but the applicant, if not an arriving alien, retains the right to renew his or her application in proceedings under 8 C.F.R. part 240.")[5] The regulation expressly states, however, that "[n]othing in this section shall entitle an alien to proceedings under section 240 of the [INA] who is not

_____

[4] Title 8 U.S.C. § 1255(c)(4) appears to create an exception for immediate relatives of U.S. citizens who can satisfy the requirements of § 1255(a). As explained below, however, this section does not apply to Lacey.

[5] Part 240, which was titled "Proceedings to Determine Removability of Aliens in the United States," has now been redesignated as Part 1240. Aliens and Nationality; Homeland Security; Reorganization of Regulations, 68 Fed. Reg. 9824-01 (Feb. 28, 2003), codified at 8 C.F.R. §§ 1240.1 et seq.

otherwise so entitled."[6]  *Id.*  Section 240 of the INA, codified in relevant part at 8 U.S.C. § 1229a, governs agency removal proceedings.[7]

The effect of this regulatory/statutory scheme is to permit aliens entitled to removal proceedings to appeal denials of adjustment of status within those proceedings, while precluding aliens not otherwise entitled to removal proceedings from compelling review by filing belated applications for adjustment of status (which is, of course, precisely what Lacey is attempting to do). We now join the Tenth Circuit in holding that

> an alien who overstays his authorized time under the VWP and files for an adjustment of status after he has overstayed, but before the issuance of a removal order, has waived his right to contest a subsequent removal order through a renewed application for adjustment of status, or to otherwise seek review of the previously filed adjustment of status [application].

*Ferry*, 457 F.3d at 1128.  Accordingly, we lack jurisdiction to review Respondent's denial of Lacey's adjustment application.[8]

### III. CONCLUSION

For the reasons stated above, we **DISMISS** Lacey's petition for review of the order of removal.

---

[6] Lacey argues that we should follow the reasoning set forth by the Ninth Circuit in *Freeman v. Gonzales*, 444 F.3d 1031 (9th Cir. 2006), in which the court held that a VWP alien who applied for adjustment of status *during her ninety-day authorized visit* was not bound by the no-contest provision of her visa waiver.  Lacey's circumstances are, however, more akin to those of the petitioner in *Ferry*, with regard to which the Tenth Circuit held that "a VWP alien who overstays his authorized time and is ordered removed has waived his right to contest that removal through an application for adjustment of status."  457 F.3d at 1128.  Because *Freeman* presented a factual scenario meaningfully different than that of *Ferry* and that which confronts us here, we decline to address the issue whether a VWP participant may obtain review under circumstances like those of *Freeman*, where an application for adjustment of status is filed before the expiration of the authorized visit.

[7] These statutory and regulatory provisions, which establish and govern the review by IJs of removal orders, are relevant here because such review is precisely the process that Lacey claims he is due.  *See* Pet'r Br. at 19-20.

[8] Because Lacey's constitutional arguments rest upon the faulty premise that his adjustment-of-status application endowed him with constitutional due-process rights, we need not address the merits of those arguments.