In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 07-1069

MOHAMMED BAYO,

*Petitioner,*

*v.*

MICHAEL CHERTOFF, Secretary of Homeland Security,<sup>Œ</sup>

*Respondent.*

———————

Petition for Review of an Order of the
Department of Homeland Security.

———————

ARGUED JULY 8, 2008—DECIDED AUGUST 1,  2008

———————

Before BAUER, COFFEY, and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*. Mohammed Bayo, a citizen of
Guinea, used a stolen Belgian passport to enter the
United States in 2002 under the Visa Waiver Program
(VWP). The VWP allows citizens of participating
countries to visit the United States for 90 days without a

———————

<sup>Œ</sup> Because Bayo petitions for review of an order of the Depart-
ment of Homeland Security, we have substituted the Secretary
of Homeland Security, Michael Chertoff, as the named respon-
dent.

visa so long as the visitors agree to waive the right to contest removal proceedings (other than through an application for asylum). *See* 8 U.S.C. § 1187. Bayo received such a waiver in English, which is not his native language, and relying on his signature on the waiver, the Department of Homeland Security (DHS) ordered his removal after he overstayed his allotted 90 days. Bayo seeks review of the administrative removal order, arguing that his waiver is not enforceable because as a non-English speaker he did not understand the document. In considering an issue of first impression in this circuit, but consistent with the ruling of the only other circuit to consider the matter in a published decision, we hold that a waiver under the VWP is valid only if entered into knowingly and voluntarily. We therefore grant the petition for review and remand to DHS for a hearing on the factual issue whether Bayo knowingly and voluntarily waived his right to a removal hearing.

**Background**

Belgium, like the United States, is a participant in the VWP, *see* 8 C.F.R. § 217.2(a), although Bayo's native country of Guinea is not.[1] Bayo submitted his signed VWP

---

[1] For removal purposes, aliens who enter the United States under the VWP by presenting a fraudulent passport bind themselves to the program to the same extent as aliens who are legitimate citizens of VWP nations. *See Zine v. Mukasey*, 517 F.3d 535, 542-43 (8th Cir. 2008); *see also* 8 C.F.R. § 217.4(a)(1). The government has not argued that by presenting a fraudulent passport, Bayo disqualified himself from challenging the validity of the waiver, and so that issue has been waived.

waiver while entering the United States at Newark airport on July 12, 2002. The waiver stated in English that Bayo waived the right "to review or appeal of an immigration officer's determination as to [his] admissibility, or to contest, other than on the basis of an application for asylum, any action in deportation." The waiver also contained a clause, again in English, providing that Bayo had read and understood the form and that he had answered its questions truthfully. (We attach to this opinion a copy of Bayo's waiver; it and Bayo's signature are largely illegible and so we quote from the government's description of its contents and the standard form.)

Bayo remained in the United States beyond the 90-day stay authorized by the VWP and eventually settled in Indianapolis, where he married a United States citizen. Based on the marriage, Bayo and his wife applied in 2006 to adjust his status to that of legal permanent resident. Shortly thereafter, Immigration and Customs Enforcement investigators learned that Bayo had entered the country using a stolen Belgian passport. Department of Homeland Security officers consequently arrested Bayo, who admitted that he was in the country illegally and handed over the Belgian passport. DHS concluded that Bayo had overstayed his 90-day admission under the VWP, and in light of his signed waiver, ordered his removal. The order stated that Bayo was entitled to remain in the United States only until October 11, 2002, and that he had "remained in the United States longer than authorized." Bayo received no removal hearing. Consequently, he was not permitted to contest removal based on his petition to adjust his status or his claim that he did not knowingly sign the hearing waiver.

**Analysis**

Bayo makes two arguments on appeal: first, that as a matter of due process, the waiver is unenforceable because he did not knowingly consent to it, and second, that even if the waiver is enforceable he cannot be removed while his adjustment-of-status application is pending. As an initial matter, we must first determine whether we have jurisdiction over Bayo's claims. Although federal courts of appeals generally have jurisdiction to review final orders of removal, *see* 8 U.S.C. § 1252(a)(5), the VWP waiver strips us of jurisdiction over non-asylum challenges to the removal of a VWP alien. *See Lacey v. Gonzales*, 499 F.3d 514, 518 (6th Cir. 2007); *see also* 8 U.S.C. § 1187(b)(2). Bayo claims that he is not subject to this jurisdictional bar because as a non-English speaker he did not validly waive his right to a removal hearing and appellate review.

We, of course, have jurisdiction to determine our jurisdiction, *see Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 (2006); *Morales-Morales v. Ashcroft*, 384 F.3d 418, 421 (7th Cir. 2004), and so we may examine whether the waiver validly bars us from reaching Bayo's claim. *See Wigglesworth v. INS*, 319 F.3d 951, 959-60 (7th Cir. 2003) (examining whether alien's VWP waiver deprived the court of jurisdiction). But if the waiver is valid, Bayo's alternative argument—that he has petitioned to adjust his status—cannot postpone his removal. Bayo points to a Ninth Circuit decision to support his position that the status-adjustment statute in effect overrides the VWP's waiver-of-hearing provision. *See Freeman v. Gonzales*, 444 F.3d 1031 (9th Cir. 2006); *see also* 8 U.S.C. § 1255(a); 8 U.S.C. § 1187(b)(2). But in *Freeman*, unlike here, the alien married an American citizen before she entered

the United States under the VWP, and she petitioned to adjust her status before her 90-day visit expired. *See Freeman*, 444 F.3d at 1032-33. More importantly, the Ninth Circuit has recently joined the Sixth and Tenth Circuits in holding that permitting a VWP alien to adjust his status after his 90-day stay has expired, as Bayo seeks here, would create an avoidable conflict between the no-contest provision of the VWP program and the adjustment-of-status statute. *See Momeni v. Chertoff*, 521 F.3d 1094, 1097 (9th Cir. 2008); *Lacey*, 499 F.3d at 519; *Schmitt v. Maurer*, 451 F.3d 1092, 1096 (10th Cir. 2006). Even if we were to adopt the *Freeman* standard as Bayo asks, it represents a narrow exception, inapplicable here, to the general rule that VWP aliens who have validly waived their right to a removal hearing are entitled only to asylum proceedings, and it cannot help Bayo circumvent the VWP waiver's jurisdictional bar. *See Momeni*, 521 F.3d at 1097.

The only issue available for our review, then, is whether Bayo unknowingly, and therefore invalidly, waived his right to a hearing and appellate review. In his brief, Bayo claims that he could not understand the waiver because it was in English and he speaks only French, the primary language spoken in Guinea. Bayo also says that he has not completed high school, had not traveled internationally before he arrived in Belgium, and did not consult with an attorney before signing the waiver. Because of his limited education and travel experience, and because the waiver was not translated into his spoken language, Bayo argues that he did not knowingly waive his right to a hearing.

As a general rule, deportable aliens within the United States are entitled to due process protections. *See, e.g.,*

*Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (holding that "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent"). These protections include the right to challenge the government's claim that it can summarily remove an alien found within the United States. *See Floroiu v. Gonzales*, 481 F.3d 970, 974 (7th Cir. 2007) (holding that due process requires that aliens receive a meaningful opportunity to be heard in deportation proceedings); *Kerciku v. INS*, 314 F.3d 913, 917-18 (7th Cir. 2003) (same). Applying these principles to VWP waivers, the Fifth Circuit has held that due process requires that a waiver under the VWP must be knowing and voluntary. *Nose v. Att'y Gen.*, 993 F.2d 75, 79 (5th Cir. 1993); *see also Brewer v. Williams*, 430 U.S. 387, 404 (1977) (defining waiver as "an intentional relinquishment or abandonment of a known right"); *United States v. Van Waeyenberghe*, 481 F.3d 951, 957 (7th Cir. 2007) (waivers of constitutional rights must be knowing and voluntary).

Most circuits, including our own, have not yet faced this specific issue squarely as the Fifth Circuit did in *Nose*. In our only case involving a challenge to the validity of a VWP waiver, we assumed without deciding that due process requires a knowing and voluntary waiver, and ruled that the record had established that the alien had knowingly and voluntarily waived her right to a hearing. *See Wigglesworth*, 319 F.3d at 959-60; *see also Lacey*, 499 F.3d at 519-20 (upholding waiver where petitioner did not claim waiver was unknowing or involuntary); *Ferry v. Gonzales*, 457 F.3d 1117, 1128-29 (10th Cir. 2006) (noting that aliens facing deportation are entitled to due process but denying petitioner hearing because he had

not disputed that his waiver was knowing and voluntary). In *Wigglesworth*, however, we had the benefit of a full administrative record and factual findings. *See Wigglesworth*, 319 F.3d at 953. The reason a record existed was that the case was an anomaly: the former INS erroneously began removal proceedings before an IJ and only later realized that the alien had waived her right to those proceedings under the VWP. *Id.* The INS moved to terminate the proceedings, and the alien responded by challenging the validity of her waiver before both the IJ and the Board of Immigration Appeals. *Id*. Because the administrative record showed that the waiver was knowing and voluntary, we did not have to reach the specific constitutional question that the Fifth Circuit answered in *Nose*. *Id*. at 959-60. By contrast, in this case we cannot review administrative findings regarding Bayo's claim that he did not knowingly waive his right to challenge his removal because there are none. We are thus faced squarely with the issue left undecided in *Wigglesworth*: does due process require that an alien's waiver under the VWP must be knowing and voluntary?

The government argues "no," based on the belief that Bayo enjoyed no constitutional rights *before* he was admitted to the United States and therefore his waiver, which he signed before his technical entry, need not have been knowing and voluntary. Put less euphemistically, the government's position, if correct, would mean that before an alien enters the country, the Constitution does not prevent it from confusing, tricking or coercing that alien into signing a waiver. The government points to the Supreme Court's decisions in *Johnson v. Eisentrager*, 339 U.S. 763 (1950) and *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990) to support its claim that extraterri-

torial aliens have no constitutional rights. To begin with, neither case is precisely on point because they both involved government conduct on foreign soil. *Eisentrager* held that an enemy combatant convicted by a military commission and held outside the United States did not have the right to bring habeas corpus proceedings in federal court. *See Eisentrager*, 339 U.S. at 777; *cf. Rasul v. Bush*, 542 U.S. 466, 475-76 (2004) (distinguishing *Eisentrager* and observing that its specific facts were crucial to its constitutional outcome). And *Verdugo-Urquidez* held that the Fourth Amendment did not govern a search by American authorities in Mexico of the home of a Mexican citizen. *See Verdugo-Urquidez*, 494 U.S. at 271-72.

Second, the Supreme Court has just recently held (for the first time, the Court acknowledged) that the Constitution reaches aliens technically outside the United States but within territory it exclusively controls. *See Boumediene v. Bush*, 128 S. Ct. 2229 (2008). Both parties submitted their briefs before the Supreme Court decided *Boumediene,* and therefore they lacked the benefit of the *Boumediene* court's analysis. Nonetheless *Boumediene* suggests that Bayo, as an alien technically outside the country's border when he submitted his waiver to border agents, enjoyed some constitutional protections against arbitrary government action. In *Boumediene*, the Supreme Court specifically rejected the government's position that the Constitution had no extraterritorial effect, observing that "even when the United States acts outside its borders, its powers are not 'absolute and unlimited' but are subject 'to such restrictions as are expressed in the Constitution.'" *Id.* at 2259 (quoting *Murphy v. Ramsey*, 114 U.S. 15, 44 (1885)). It concluded that even noncitizens detained by the United States outside the country but in

territory exclusively under American control receive the constitutional right to challenge the government's actions. *Id.* at 2262.

This case is more like *Boumediene* than *Eisentrager*: the government here contends that the Constitution cannot reach aliens at a port of entry that is physically within United States territory and under its exclusive control but, by virtue of a legal fiction, outside our borders. *See, e.g., Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 213-15 (1953) (recognizing "entry fiction" doctrine that alien seeking admission has not entered the United States even if alien is physically within American borders); *Atunnise v. Mukasey*, 523 F.3d 830, 838-39 (7th Cir. 2008) (collecting cases). But *Boumediene* holds that even alien enemy combatants detained outside the United States but in territory under its control enjoy constitutional rights. That holding undermines the government's contention that Bayo, an alien *non*combatant, enjoyed no constitutional protection even though he was physically within United States territory in Newark when the government received his waiver.

What is more, even before *Boumediene*, courts of appeals recognized that aliens not yet admitted or otherwise excludable, but physically on American soil, have some constitutional rights. *See, e.g., Wong v. United States*, 373 F.3d 952, 970-74 (9th Cir. 2004) (collecting cases and noting that entry fiction does not exclude nonadmitted aliens from all constitutional coverage). Courts have found that nonadmitted aliens possess rudimentary substantive due process rights, *see Chi Thon Ngo v. INS*, 192 F.3d 390, 396 (3d Cir. 1999), such as the right to humane treatment, *see Martinez-Aguero v. Gonzalez*, 459 F.3d 618, 623 (5th Cir. 2006) (discussing *Lynch v. Cannatella*, 810 F.2d 1363, 1373-

74 (5th Cir. 1987)). The government does not explain how it can obtain involuntary or unknowing waivers (i.e., coerced and uninformed) humanely.

The government also ignores that Bayo's waiver was prospective and reached forward to the time period after he was undisputably admitted into the United States. The distinction between "an alien who has effected an entry and one who has never entered runs throughout immigration law." *Zadvydas*, 533 U.S. at 693. While the government is correct that an alien in detention at a port of entry is not technically within the United States, *see Atunnise*, 523 F.3d at 838-39, the government's analysis treats Bayo as though he were *still* at the border today, instead of within the United States, where he unquestionably enjoys constitutional protections against removal. *See Zadvydas*, 533 U.S. at 693 (holding that once an alien enters the country, the Due Process Clause applies).

The government insists that all that is required for Bayo's waiver to be enforceable is that he was admitted under the VWP and that his signature appears on the waiver form. But this implies that, by the simple expedient of coercing or misleading an alien outside the United States into signing an authentic but unknowing and involuntary waiver, the government could get aliens to waive all rights that they would otherwise acquire once within the country. On this theory, the government could, for instance, force enemy combatants captured on foreign soil and brought to an American port of entry to waive all due-process or habeas-corpus rights and thereby circumvent the outcome of cases like *Boumediene,* so long as the signatures are real.

The government could have argued, but does not, that under well-established principles of contract law,

we may presume that Bayo's waiver of rights was knowing and voluntary as a matter of law because he affixed his signature to the waiver. *See, e.g., Dugan v. R.J. Corman R.R. Co.*, 344 F.3d 662, 667 (7th Cir. 2003) (noting that there is no "I didn't read it" defense to breach of contract); *Paper Express, Ltd. v. Pfankuch Maschinen*, 972 F.2d 753, 757 (7th Cir. 1992) (applying fundamental principle that a person who signs a contract is presumed to know its terms to enforce contract against non-German-speaking party even though rules incorporated in contract by reference were written in German). As a general rule, a competent person who signs a contract is held to its terms, even if it is in a different language and even if he later claims not to have understood it, so long as the other party has not resorted to fraud or coercion. *See Paper Express*, 972 F.2d at 757. But more is required for a valid waiver of constitutional rights than for an enforceable contract. *See Pierce v. Atchison Topeka & Santa Fe R.R. Co.*, 110 F.3d 431, 438 (7th Cir. 1997) (observing that waivers of federal rights cannot be governed solely by contract law); *see also United States v. Bownes*, 405 F.3d 634, 637 (7th Cir. 2005) (discussing, in criminal context, due process protections in excess of ordinary contract law principles for waivers of constitutional rights). A waiver is an intentional relinquishment of a known right, which means that it must be voluntary and knowing. *United States v. Olano*, 507 U.S. 725, 733 (1993). Moreover, courts "indulge every reasonable presumption against waiver of fundamental constitutional rights." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (internal quotation marks and citations omitted); *United States v. Cooper*, 243 F.3d 411, 418 (7th Cir. 2001). A signature accompanying a waiver of federal rights is therefore not enough; rather, there must be reason beyond the signature alone to believe that the waiver is knowing

and voluntary. *See, e.g., Domka v. Portage County*, 523 F.3d 776, 781-82 (7th Cir. 2008) (looking beyond signature on waiver to assess whether plaintiff understood what he had signed).

It is also worth noting that the government does not take a more moderate stance: it does not argue, for instance, that even if due process prevents it from tricking or coercing a waiver, the Constitution does not prohibit it from enforcing a waiver that it did not intend to be uninformed. It might have argued that Bayo does not contend that the government set out to confuse or coerce him, and therefore it did not violate due process in having him sign the English-language form. Even had the government taken this position, however, due process would nonetheless require that the government take steps reasonably designed to assure that the waiver is knowing and voluntary. Indeed, in those cases where VWP waivers have been found knowing and voluntary, the government has taken precisely such steps: it has provided the petitioner a waiver in his or her spoken language, and from this a fact-finder could infer that the petitioner understood the waiver. *See Wigglesworth*, 319 F.3d at 954 (noting that alien signed Swedish-language waiver); *Nose*, 993 F.2d at 79, 80 n.8 (observing that alien who spoke both English and Japanese had signed English waiver on some trips and Japanese waiver on another). But here, because there has been no fact-finding hearing, we have no basis for concluding that the government took even that modest step. Without evidence that it offered Bayo a waiver in his native French tongue, the government is left to contend that because he answered "no" to compound English-language questions posed to him on the waiver, he must have understood the entire waiver.

But whether he understood the waiver is a factual question, and no fact-finder has yet answered it, even assuming that answers on these forms indicate language fluency. *Cf. Atunnise*, 523 F.3d at 835 (holding that answers to compound questions in DHS forms can be meaningless).

The government warns that if we conclude that Bayo's waiver must be knowing and voluntary, we will unleash an avalanche of challenges to VWP waivers that will overwhelm the judiciary and jeopardize international relations. But it has been fifteen years since the Fifth Circuit, a border circuit, concluded that VWP waivers must be knowing and voluntary. *See Nose*, 993 F.2d at 79. If a due process requirement would, as the government contends, cause "millions of aliens to use the VWP as a vehicle for gaining quick and easy admission to the United States" only to then "disavow" their waivers, presumably there would be some evidence that the Fifth Circuit has faced this dilemma. Instead, we could find no published Fifth Circuit cases after *Nose* addressing the validity of an alien's VWP waiver, and the government has not directed us to any additional authority to support its doomsday prediction.

The government finally contends that even if due process requires that VWP waivers are knowing or voluntary, Bayo has suffered no harm. According to the government, Bayo is in precisely the same position he would have occupied had his waiver been knowing and voluntary—removal without a hearing. Moreover, continues the government, if Bayo had been told what he was signing and thus refused to sign the waiver, he would have been denied admission; he was actually admitted for 90 days, and so any "error inured to his

benefit." But the government ignores the possibility that, if it had denied Bayo VWP admission, he could have obtained a visa through ordinary consular channels. He then could have entered the United States, become eligible to adjust his status based on his marriage, and contested his removal at a hearing on the basis of his adjustment-of-status petition. *See* 8 U.S.C. § 1255; 8 C.F.R. § 245.2. But by seeking to enforce a waiver that Bayo says he did not understand, the government is depriving him of a chance to adjust his status and contest his removal on that ground. He has therefore been harmed.

In light of *Boumediene* and jurisprudence from the courts of appeals permitting limited extraterritorial application of the Constitution, we adopt the view that we assumed in *Wigglesworth*, and that the Fifth Circuit endorsed in *Nose,* that waivers of rights under the VWP must be knowing and voluntary. By so doing, we adhere to the longstanding general principle that waivers of constitutional rights must be knowing and voluntary. *See Van Waeyenberghe*, 481 F.3d at 957; *see also Castillo v. United States*, 34 F.3d 443, 445-46 (7th Cir. 1994) (holding involuntary a defendant's waiver of his constitutional right to separate counsel from codefendant where waiver was not translated into Spanish and there was insufficient evidence in record to show that defendant knew enough English to understand the waiver).

This case reaches us in an unusual posture—no immigration judge has ever heard Bayo's claim that his waiver was unknowing, and he petitions directly from DHS's order of removal. The government urges us to act as factfinder and find that his waiver was knowing. But we sit as a court of review and there is no developed record to review. That is why we asked the parties to address in

supplemental briefs where Bayo's hearing on the validity of his waiver should occur on remand. We specifically ordered that the parties consider the relative merits of (1) remanding to the Board of Immigration Appeals with instructions to send the case to an immigration judge, (2) remanding to DHS (which currently has no adjudicatory procedures in place), and (3) appointing a special master under Federal Rule of Appellate Procedure 48 to conduct a limited fact-finding hearing for us. *See Rafaelano v. Wilson*, 471 F.3d 1091, 1098 (9th Cir. 2006); *id.* at 1098-1100 (Rawlinson, J., dissenting).

   In response, Bayo suggests that we remand his case to an immigration judge, while the government asks that we send the case back to DHS so that the agency can decide how to adjudicate VWP waiver challenges. The government reports that the immigration courts "never have *any* role in a VWP case" (unless the alien seeks asylum) and that "VWP adjudications are conducted entirely by the Department of Homeland Security, without any involvement by the Department of Justice." Because as a general rule courts should leave administrative agencies free to develop their own procedures, *see Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978); *Johnson v. Gonzales*, 478 F.3d 795, 799 (7th Cir. 2007), and because according to the government the immigration courts have limited experience with VWP waivers, we adopt the government's suggestion and remand to DHS for the agency to fashion adjudicatory procedures consistent with due process.

## Conclusion

Because Bayo is entitled to a hearing in which he may challenge his waiver, we grant his petition for review and remand to DHS for a fact-finding hearing on the issue of whether he knowingly and voluntarily waived his due process rights.

b2197.026126

**U.S. Department of Justice**

Immigration and Naturalization Service

### Welcome to the United States

I-94W Nonimmigrant Visa Waiver Arrival/Departure Form

Instructions

This form must be completed by every nonimmigrant visitor not in possession of a visitor's visa who is a national of one of the countries enumerated in 8 CFR 217. Please print legibly with pen in ALL CAPITAL LETTERS. USE ENGLISH.

This form is in two parts. Please complete both the Arrival Record, items 1 through 11 and the Departure Record, items 14 through 17. The reverse side of this form must be signed and dated. Children under the age of fourteen must have their form signed by a parent/guardian.

Item 7 - If you are entering the United States by land, enter LAND in this space. If you are entering the United States by ship, enter SEA in this space.

**Admission Number**

660379310 09

Immigration and Naturalization Service
Form I-94W (10/91) Arrival Record
**VISA WAIVER**

1. Family Name
BAYO

2. First (Given) Name
MOHAMED

3. Country of Citizenship
BELGIUM

4. M

5. Date of Birth
7 32 2 1

6. KW 1 9 6 6

Plane Kiss Airp

Government Use Only



000011