# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2063

_____

Chehade Dib Lichaa Al Khouri,    *
          *
      Petitioner,    *
          *    Petition for Review of
     v.       *    an Order of the Board of
          *    Immigration Appeals.
John Ashcroft, Attorney General of    *
the United States,    *
          *
      Respondent.    *
          *
          *

_____

Submitted: March 10, 2004
Filed: April 1, 2004

_____

Before RILEY and MELLOY, Circuit Judges, and ERICKSON,[1] District Judge.

_____

MELLOY, Circuit Judge.

Mr. Chehade Dib Lichaa Al Khouri, a Lebanese citizen, petitions for review of the Board of Immigration Appeals' (BIA) decision, affirming without opinion the Immigration Judge's (IJ) denial of his application for asylum, withholding of

_____

[1]The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota, sitting by designation.

removal, and relief under the United Nations Convention Against Torture. Because we find that Mr. Al Khouri was denied a full and fair hearing on his claims for relief before the IJ, we grant Mr. Al Khouri's petition for review of the BIA's decision and remand for a new hearing.

I.

Mr. Al Khouri left Lebanon in January of 1998. In Lebanon, Mr. Al Khouri was employed as a taxi cab driver, and he claims that Syrian[2] and Hizballah[3] forces stopped him on several occasions and attempted to recruit him to transport people and weapons. Mr. Al Khouri never explicitly refused their requests, nor did he acquiesce. According to Mr. Al Khouri, two days before he fled Lebanon, Syrian soldiers pulled him from his car and beat his bare feet in front of his wife and children. He also testified that Syrian and Hizballah forces have gone to his house in search of him, and he believes that his mistreatment is due to his refusal to cooperate with their efforts to recruit his assistance and because he is Christian.

Mr. Al Khouri arrived in the United States using a fraudulent visa. The Immigration and Naturalization Service (INS) placed him in removal proceedings in

---

[2]The 1999 Country Report and Human Rights Practices for Lebanon, which was admitted into evidence at Mr. Al Khouri's hearing, states that non-Lebanon forces, including approximately 30,000 Syrian troops, control much of the country. United States Department of State, Country Report and Human Rights Practices for Lebanon, June 2, 1998, exh. 5., contained in Joint App., at 257, available at http://www.usis-israel.org.il/publish/press/state/archive/march/sd12_319.htm.

[3]According to this same report, Hizballah is an Iranian-backed Shi'a Muslim militia with a strong presence in southern Lebanon. United States Department of State, Country Report and Human Rights Practices for Lebanon, June 2, 1998, exh. 5., contained in Joint App., at 257, available at http://www.usis-israel.org.il/publish/press/state/archive/march/sd12_319.htm.

February of 1999. INS charged Mr. Al Khouri with misrepresentation and failure to possess entry documents into the United States. Mr. Al Khouri conceded these charges, and, therefore, the IJ found him removable. Mr. Al Khouri immediately sought relief from removal and indicated his intent to file for political asylum and withholding of removal and to seek relief under the Convention Against Torture. Accordingly, the IJ scheduled an individual hearing on the merits of these claims for May of 2000. At this hearing, the IJ denied relief and ordered that Mr. Al Khouri be removed from the United States to Lebanon.

Mr. Al Khouri was initially represented by an attorney, Ms. Suzanne Brown. However, because Mr. Al Khouri failed to pay her for her services and failed to communicate with her to prepare his case, she notified him six months before his merits hearing that she intended to withdraw. Mr. Al Khouri, however, did not contact Ms. Brown to make financial arrangements or to prepare his case, despite the risk that he would be forced to proceed without counsel. In a certified letter dated February 29, 2000, Ms. Brown informed Mr. Al Khouri that she had filed a motion to withdraw as his attorney, and she advised him that he should find another lawyer.

Because the IJ had not ruled on Ms. Brown's motion to withdraw, she appeared at Mr. Al Khouri's merits hearing on May 25, 2000. There, she renewed her motion to withdraw. The IJ granted her request and explained to Mr. Al Khouri that he could go forward without counsel or could withdraw his application and accept the departure order. The IJ refused to grant Mr. Al Khouri a continuance, and Mr. Al Khouri opted to proceed without counsel. In addition, before leaving the hearing, Ms. Brown gave Mr. Al Khouri a copy of his 200-page application. This application details all the circumstances that would support Mr. Al Khouri's claim. The application was written in English. Mr. Al Khouri's native language is Arabic. An interpreter was present at the hearing, and the IJ recessed court for ten minutes to give Mr. Al Khouri an opportunity to review his voluminous application with the interpreter.

At the beginning of the hearing, the IJ told Mr. Al Khouri that he had reviewed all the documents submitted into evidence. In addition, the IJ specifically asked Mr. Al Khouri if the information in his application was correct. Mr. Al Khouri responded that it was, and, therefore, the IJ instructed him to sign the statement under oath and admitted the statement into evidence.

Because Mr. Al Khouri was acting pro se, the IJ questioned him about the basis of his claims. He instructed Mr. Alkhouri,

> Now, sir, what's going to happen next is that I'm going to ask you questions, since you're not represented about your claim. In other words to go into your case. The way I'm going to elicit, that is bring out the information is by questions and answers. *I don't want you to tell me your whole story, just answer one question.*

Tr., at 21; Joint App., at 103 (emphasis added).

At the conclusion of the hearing, the IJ determined that Mr. Al Khouri was not credible and that he did not merit relief from the removal order on any of the grounds asserted in his application. Pertinent to this appeal, the IJ's adverse credibility determination was based in substantial part on the differences between Mr. Al Khouri's testimony and his application. In particular, the IJ highlighted in his oral decision that he,

> concluded that [Mr. Al Khouri's] testimony is not really reliable. *I have reached that conclusion because of the omission of many of the averments or statements contained in the application about his experience.* If the events occurred as he described in his statment [sic], he had a very different experience and for very different reasons than that which he has described in his testimony today.

Oral Dec. of the IJ, at 7; Joint App., at 74 (emphasis added).

II.

Mr. Al Khouri appealed the IJ's decision denying him relief to the Board of Immigration Appeals. The BIA affirmed the decision without opinion pursuant to 8 C.F.R. § 3.1, which sets forth a streamlined procedure wherein a single member of the BIA, rather than the usual three-member review, summarily affirms the outcome reached by the IJ but not necessarily the IJ's reasoning. Therefore, for purposes of this petition for review to our court, we review the IJ's findings as though they had been made by the BIA. Dominguez v. Ashcroft, 336 F.3d 678, 679 n. 1 (8th Cir.2003) (citing 8 C.F.R. § 1003.1(a)(7)). Our standard of review for legal determinations is de novo. INS v. Aguirre-Aguirre, 526 U.S. 415, 424 (1999).

A.

Mr. Al Khouri requested a continuance after Ms. Brown's withdrawal so that he could procure a new lawyer. He argues that his due process rights were violated when the IJ granted Ms. Brown's motion to withdraw, denied his motion for a continuance, and forced him either to proceed pro se or to accept the departure order. We reject this argument and find that the IJ did not abuse his discretion when he refused to continue Mr. Al Khouri's removal hearing and that there was no denial of Mr. Al Khouri's right to counsel.

It is well-settled that, while there is no Sixth Amendment right to counsel, Uspango v. Ashcroft, 289 F.3d 226, 231 (3d Cir. 2002), aliens have a statutory right to counsel at their own expense, 8 U.S.C. § 1229a(b)(4)(A), and are entitled to the Fifth Amendment's guarantee of due process of law in deportation proceedings. Reno v. Flores, 507 U.S. 292, 306 (1993). In certain circumstances, depriving an alien of the right to counsel may rise to the level of a due process violation. United States v. Torres-Sanchez, 68 F.3d 227, 230 (8th Cir. 1995).

No such violation occurred here, however. First, aliens are free to waive their statutory right to counsel, which Mr. Al Khouri did. See id. ("An alien may voluntarily waive representation by counsel, however, and that waiver will be respected."). Second, Mr. Al Khouri is entirely to blame for the situation that unfolded at his hearing which resulted in his proceeding without representation of counsel. It would be nonsensical to recognize a constitutional entitlement to a continuance based on counsel's withdrawal when petitioners themselves are responsible for the withdrawal.

Six months before the hearing, Ms. Brown warned Mr. Al Khouri that, if he did not contact her to make payment arrangements and to prepare his case, she would withdraw her representation. Three months before the hearing, she informed him that she indeed filed a motion to withdraw with the court, and she advised Mr. Al Khouri to find another attorney. An IJ has wide discretion to manage his or her docket, and it was not an abuse of discretion to deny Mr. Al Khouri's request for a continuance, especially where Mr. Al Khouri had more than sufficient notice of and bore the blame for his counsel's withdrawal. Cf. Ponce-Leiva v. Ashcroft, 331 F.3d 369, 374-75 (3d Cir. 2003) (holding no due process violation and no abuse of discretion when IJ denied last minute continuance request and where alien's attorney failed to appear at removal hearing).

B.

Nevertheless, an alien's right to due process of law in deportation proceedings encompasses more than any right to counsel alleged by Mr. Al Khouri. The Fifth Amendment's due process clause mandates that removal hearings be fundamentally fair. Flores, 507 U.S. at 306; Castaneda-Suarez v. INS, 993 F.2d 142, 144 (7th Cir. 1993); see also Plyler v. Doe, 457 U.S. 202, 210 (1982) ("Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments."). In

addition, when an alien appears pro se,

> it is the IJ's duty to "fully develop the record." [*Jacinto v. INS*, 208 F.3d 725, 733-34 (9th Cir. 2000)]. Because aliens appearing pro se often lack the legal knowledge to navigate their way successfully through the morass of immigration law, and because their failure to do so successfully might result in their expulsion from this country, it is critical that the IJ "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Id.* at 733 (quoting *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985)).

Agyeman v. INS, 296 F.3d 871, 877 (9th Cir. 2002); accord Yang v. McElroy, 277 F.3d 158, 162 (2d Cir. 2002) (exploring remand where there are changed country conditions and explaining the benefits of this procedure, stating "This procedure recognizes that the IJ whose decision the Board reviews, unlike an Article III judge, is not merely the fact finder and adjudicator but also has an obligation to establish the record.") (citing 8 U.S.C. § 1229a (b)(1) ("The immigration judge shall administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses."); see also Richardson v. Perales, 402 U.S. 389, 410 (1971) (finding that an administrative law judge "acts as an examiner charged with developing the facts"); Charles H. Koch, Jr., Administrative Law and Practice § 5.25 (2d ed. 1997) (noting that "[t]he presiding official is pivotal to the factfinding function of an evidentiary hearing and hence, unlike the trial judge, an administrative judge has a well established affirmative duty to develop the record.")).

In Mr. Al Khouri's case, a combination of factors led to a violation of his due process rights. First, the IJ did not fulfill his duty to fully develop the record. We do not suggest that the IJ had a duty to act as Mr. Al Khouri's advocate or lawyer. And indeed, we recognize the IJ's authority to conduct proceedings, including the questioning of witnesses, in an efficient and orderly manner. See 8 U.S.C. § 1229a(b)(1). However, curtailing Mr. Al Khouri's testimony and circumscribing his

ability to elaborate on the details of his claim by instructing him only to answer the questions asked and then concluding that Mr. Al Khouri's limited responses undermined his credibility violates notions of fundamental fairness.

Second, the IJ informed Mr. Al Khouri that his application was in evidence and would be considered. Without counsel and without further instruction from the IJ, Mr. Al Khouri did not have reason to believe that his testimony need be as detailed as his application, given that he swore to its accuracy under oath and in light of the IJ's assurance that he had read it and would consider it. It was, therefore, unfair to expect Mr. Al Khouri's testimony to be as complete as his application.

Third, while the IJ did not abuse his discretion nor violate Mr. Al Khouri's due process rights when he denied Mr. Al Khouri's request for a continuance, the IJ's failure to develop the record compounded the effect of the limited time Mr. Al Khouri was given to prepare his testimony after learning that his attorney would not represent him at the hearing. Mr. Al Khouri had ten minutes to review a 200-page document, which was written in a language that was foreign to him. Again, it is clear from the IJ's oral opinion that he expected Mr. Al Khouri to testify as to each of the events outlined in his application that would support his claims for relief from deportation. Under these circumstances, it was unfair to give Mr. Al Khouri such an abbreviated time frame in which to review his application and, nevertheless, to expect a detailed recitation of the application's factual allegations in Mr. Al Khouri's testimony.

For these reasons, we find that Mr. Al Khouri's hearing was fundamentally unfair. This finding, however, does not end the analysis because "[t]o demonstrate a violation of due process, an alien must demonstrate both a fundamental procedural error and that the error resulted in prejudice." Lopez v. Heinauer, 332 F.3d 507, 512 (8th Cir. 2003); accord Briones-Sanchez v. Heinauer, 319 F.3d 324, 327 (8th Cir. 2003) ("In order to succeed on a due process claim, an alien must prove that he was actually prejudiced by the lack of process afforded to him."); Torres-Sanchez, 68 F.3d

at 230 ("In this circuit, the establishment of a fundamentally unfair hearing in violation of due process requires a showing both of a fundamental procedural error and that the error caused prejudice; an error cannot render a proceeding fundamentally unfair unless that error resulted in prejudice.") (footnote omitted). Mr. Al Khouri has shown a fundamental procedural error, and we turn now to the question of prejudice.

C.

"Actual prejudice exists where defects in the deportation proceedings *may well have* resulted in a deportation that would not otherwise have occurred." Torres-Sanchez, 68 F.3d at 230 (emphasis added). The Ninth Circuit has similarly defined "prejudice" as an error that "'*potentially* . . . affects the outcome of the proceedings,'" Agyeman v. INS, 296 F.3d 871, 884 (9th Cir. 2002) (omission in original) (quoting Perez-Lastor v. INS, 208 F.3d 773, 780 (9th Cir. 2000)), and the Seventh Circuit has defined it as an error that "'had the potential for affecting' the outcome of the hearing." Ambati v. Reno, 233 F.3d 1054, 1061 (7th Cir. 2000) (quoting Kuciemba v. INS, 92 F.3d 496, 501 (7th Cir. 1996)).

Given that the fundamental error in Mr. Al Khouri's hearing prevented him from fully developing the merits of his case, we cannot say that, but for the lack of process afforded him, he would have been granted relief from removal. Prejudice in this context, however, does not require "but for" causation. Instead, "prejudice may be shown where the IJ's inadequate explanation of the hearing procedures and failure to elicit pertinent facts prevented the alien from presenting evidence relevant to their [sic] claim." Agyeman, 296 F.3d at 884-85.

In Agyeman v. INS, the Ninth Circuit granted relief from deportation to an alien who appeared pro se and whom an IJ misled into believing that the only way to prove his bona fide marriage to a United States citizen was to procure her in-person

-9-

testimony at his removal hearing. In <u>Agyeman</u>, the petitioner was a citizen of Ghana who had entered the United States on a student visa and subsequently married a United States citizen. <u>Id.</u> at 875. The petitioner's student visa expired, and the couple failed to prosecute his adjustment of status application. <u>Id.</u> Two years after the couple were married, the petitioner moved, without his wife, from New Jersey to Nevada, where he was detained by INS for overstaying his visa. <u>Id.</u>

The petitioner conceded removability but sought suspension of deportation based on his marriage to a United States citizen. <u>Id.</u> The petitioner informed the court that his wife suffered from bipolar disorder and had been hospitalized for two or three months at a time. <u>Id.</u> Nevertheless, the IJ told the petitioner that his wife "'must be physically present at the hearing, otherwise, I can't grant your application for adjustment of status.'" <u>Id.</u> at 876 (quoting transcript). The IJ granted a continuance, but when the petitioner's wife failed to appear at the subsequent hearing, the IJ denied the petitioner's application for adjustment of status. <u>Id.</u>

In his petition for review to the Ninth Circuit, the petitioner claimed that he was denied a full and fair hearing because the IJ failed to adequately explain what he had to prove to support his application for adjustment of status. <u>Id.</u> at 877. The Ninth Circuit agreed and granted the petition for review. In the Ninth Circuit, a spouse's testimony is not the only means to prove a bona fide marriage to a United States citizen. <u>Id.</u> Because the petitioner was appearing pro se, the Ninth Circuit ruled that the IJ had "a duty to fully develop the record . . . by probing into relevant facts and by providing appropriate guidance as to how the alien may prove his application for relief." <u>Id.</u> at 884.

Prejudice in <u>Agyeman</u> was found because the petitioner might have proffered alternative means to proving the bona fides of his marriage if he had not been told that the only way to succeed on his claim was to physically produce his wife's testimony. <u>Id.</u> at 885. The <u>Agyeman</u> court inferred prejudice because the record

-10-

reflected that the IJ told the petitioner that his wife's testimony was the exclusive means to proving his marriage and that, if he had known other means existed, he might have provided them.  Id.  The IJ's inaccurate statement denied the petitioner an opportunity to explore alternative avenues to proving his marriage, and inferring prejudice under these circumstances was warranted because the court could "not require Agyeman to 'produce a record that does not exist.'" Id. (quoting Perez-Lastor, 208 F.3d at 782).

Mr. Al Khouri, similarly, cannot produce a record that does not exist.  The IJ instructed him to confine his responses to the questions asked; yet, the IJ did not ask questions that would have elicited all the relevant information.  While the IJ listed other criteria that contributed to his adverse credibility determination, it is clear that Mr. Al Khouri's failure to testify as to all the events contained in his written application was the IJ's primary concern.  For example, in his oral opinion, the IJ stated: "There are a number of differences between the respondent's testimony and his statement," Joint App., at 71; "Yet the respondent's testimony on many points was different or did not include the facts described in his statement," Joint App., at 74; "I have reached that conclusion [the Mr. Al Khouri is not credible] because of the omission of many of the averments or statements contained in the application about his experience," Joint App., at 74; "I don't find any of that [referring to political activities] believable because he made no mention of it in his testimony today," Joint App., at 75.

Had the IJ either questioned Mr. Al Khouri more thoroughly or allowed him to tell his "whole story," it is likely that Mr. Al Khouri would not have omitted details and, consequently, that the IJ would not have found him to be incredible.  In addition, the IJ's failure to inquire into all the pertinent details of Mr. Al Khouri's application affected the IJ's findings on the merits of Mr. Al Khouri's case.  Prejudice is, therefore, established because the fundamental errors of Mr. Al Khouri's hearing

"may well have resulted in a deportation that would not otherwise have occurred," Torres-Sanchez, 68 F.3d at 230.

## III.

Accordingly, we find that Mr. Al Khouri was denied the Fifth Amendment's guarantee to due process of law and grant his petition for review. We do not reach the merits of Mr. Al Khouri's claims for relief from removal but instead remand for a new hearing.

———————————————