# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3002
No. 06-4127

_____

| | | |
|---|---|---|
| L'Aid Zine, also known as Hafed Benchellali, | * * * | |
| Petitioner, | * * | |
| v. | * * * | Petitions for Review of Orders of the Board of Immigration Appeals. |
| Michael B. Mukasey,[1] | * * * | |
| Respondent. | * | |

_____

Submitted: October 15, 2007
Filed: February 19, 2008

_____

Before LOKEN, Chief Judge, GRUENDER and BENTON, Circuit Judges.

_____

LOKEN, Chief Judge.

L'Aid Zine, a native and citizen of Algeria, fled that country in April 1996 and later used a fraudulent French passport to enter the United States under the Visa Waiver Program ("VWP"). Zine filed an application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT") on July 21, 2000. After six hearings over a three-year period, the immigration judge ("IJ") denied the

_____

[1]Attorney General Mukasey is substituted as respondent pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure.

application, finding that Zine's testimony was not credible and therefore he failed to prove that he applied for asylum within one year of arriving in the United States, or that he is eligible for asylum, withholding of removal, or CAT relief. The Board of Immigration Appeals (BIA) affirmed and then denied Zine's timely motion to reconsider or reopen its decision. Zine petitions for review of both orders. We consolidated and now deny the petitions for review.

## I. The Order Denying Asylum, Withholding of Removal, and CAT Relief

In support of his application, Zine testified that he was seized by Algerian security officers in February 1992 because he sympathized with a major Islamic opposition party. Imprisoned for two years at a military detention center in the desert, Zine was exposed to harsh living conditions, beaten with rifle butts, and tortured with electric wires. After release in 1994, he was twice arrested by Algerian special forces after police officers were killed in his neighborhood; each time, he was denied food and tortured. In March 1996, Zine was conscripted into the Algerian military where he trained for twenty-five days before escaping because he feared having to kill innocent people if he stayed in the military. He made his way to Turkey by way of Tunisia, using a visitor visa and Algerian passport and intending to get to Europe and apply for asylum. Instead, he remained in Turkey for three years before a relative in Canada provided money to fly to Thailand. While in Turkey, Zine's family in Algeria received a letter from an Islamic terrorist organization threatening to kill Zine because he had briefly served in the military, and military police detained two of his brothers and told the family they were trying to capture Zine for deserting.

After arriving in Thailand, Zine purchased a fraudulent French passport bearing his photo but the name Hafed Benchellali. He testified that he destroyed his Algerian passport and flew by way of China to San Francisco, arriving on August 3, 1999, and entering under the VWP. This Program allows the Attorney General to waive the visa requirement and permit citizens of a select list of nations, including France but not

Algeria, to visit the United States for up to ninety days. See 8 U.S.C. § 1187(a). After arriving, Zine destroyed the French passport and his I-94 entry card but kept a photocopy of the portion of the I-94 card that is retained by the entering alien. He settled in Minneapolis, overstayed the allowed VWP period, and applied for asylum. The INS issued a removal notice and placed him in an "asylum only" proceeding. See 8 U.S.C. § 1187(b); 8 C.F.R. § 1208.2.

The asylum-only hearings were repeatedly continued to allow the parties to gather additional evidence. Zine presented facsimile copies of documents from Algeria, including letters from friends and family generally supporting his testimony, a document allegedly provided upon his release from the detention center, a threat letter from a "Covenant of God" organization, and a 1996 military summons. He testified that his family mailed the originals of these documents, but they never arrived. An expert on Algeria testified that Zine's testimony was generally consistent with reports of the armed conflicts between the Algerian military and Islamic rebel groups between 1992 and 1998. Zine testified that, if he is removed to Algeria, he fears prison, torture, or death at the hands of the government based upon his perceived association with anti-government political organizations, or that he will be killed by terrorists because of his brief time in the Algerian military.

The IJ found Zine's testimony not credible. The IJ denied asylum, withholding of removal, and CAT relief "due to the negative credibility finding and the lack of objective, credible supporting documentation." The IJ also denied asylum on an additional ground -- because Zine destroyed his fraudulent passport and entry card and presented no other evidence documenting his place and time of arrival, he failed to prove by clear and convincing evidence that he applied for asylum within one year after arriving in the United States. See 8 U.S.C. § 1158(a)(2)(B).

Zine timely appealed to the BIA. The notice of appeal asserted that the denial of asylum "was incorrect as a matter of law" because the IJ's adverse credibility

finding lacked factual support in the record and the IJ gave inadequate weight to Zine's supporting evidence. His lengthy brief to the BIA argued that he is entitled to asylum because he presented credible, sufficient testimony and documentary evidence establishing past persecution and a well-founded fear of future persecution by the Algerian government on account of his political opinion and associations. On the untimeliness issue, Zine argued that it was error to place him in an asylum-only proceeding based upon an August 1999 VWP entry document and then find that his consistent testimony corroborating the I-94 photocopy failed to prove entry within one year of his July 2000 application.

The BIA in a two-paragraph Order adopted and affirmed the decision of the IJ "that there are not exceptional circumstances sufficient to overcome [Zine's] failure to timely file his application for asylum, and that without credible testimony [Zine] is not eligible for withholding of removal or relief under the [CAT]." The BIA added that, "[w]ith respect to the adverse credibility finding, we are not persuaded that it is clearly erroneous." See 8 C.F.R. § 1003.1(d)(3)(i) (BIA standard of review).

On appeal, Zine argues that the BIA erred in concluding that the IJ's adverse credibility finding was not clearly erroneous. Therefore, he argues, we should vacate the order denying asylum and withholding of removal and remand for further agency proceedings.[2] The government argues that we lack jurisdiction to consider either the asylum claim or the withholding of removal claim for two distinct reasons. The argument pertaining to asylum is clearly correct. The argument pertaining to withholding of removal is more complex.

---

[2]The parties agree that the BIA's order denying relief in an asylum-only proceeding is a final order of removal subject to judicial review under 8 U.S.C. § 1252(a)(1). See Nreka v. U.S. Attorney General, 408 F.3d 1361, 1366-68 (11th Cir. 2005). At oral argument, Zine's attorney confirmed that he has not appealed the denial of relief under the CAT.

**A. Asylum.** The statute governing asylum provides that "[n]o court shall have jurisdiction to review any determination" denying an asylum application as untimely. 8 U.S.C. § 1158(a)(3). We have consistently held that this provision bars judicial review of the agency's resolution of the relevant issues of fact. See Bejet-Viali Al-Jojo v. Gonzales, 424 F.3d 823, 827 (8th Cir. 2005) (extraordinary circumstances issue); Aden v. Ashcroft, 396 F.3d 966, 968 (8th Cir. 2005) (timeliness issue). As Zine raises no colorable constitutional challenge or question of law that might avoid this jurisdictional bar, see Mouawad v. Gonzales, 485 F.3d 405, 411 (8th Cir. 2007), we lack jurisdiction to review the denial of asylum.

**B. Withholding of Removal.** The statute governing judicial review of removal orders provides that we may review a final order of removal only if "the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). The Attorney General's regulations governing administrative appeals to the BIA provide that the alien "must specifically identify the findings of fact, the conclusions of law, or both, that are being challenged." 8 C.F.R. § 1003.3(b). Here, Zine's notice of appeal and brief to the BIA specifically challenged the denial of asylum but not the denial of withholding of removal. Accordingly, the government argues, we lack jurisdiction to consider the denial of withholding of removal because Zine failed to exhaust his administrative remedies for this claim. Zine responds that this exhaustion issue is not jurisdictional. He urges us to consider the merits of the issue because asylum and withholding of removal are specifically linked in the regulations[3] and because the BIA specifically addressed withholding of removal in affirming the IJ's decision.

---

[3]The regulations provide that applications for withholding of removal "are hereinafter referred to as 'asylum applications,'" and that an asylum application "shall be deemed to constitute at the same time an application for withholding of removal." 8 C.F.R. §§ 1208.1(a), 1208.3(b).

Resolving the parties' conflicting contentions would embroil us in unsettled questions of immigration law. Our prior decisions are inconsistent on the question whether the failure to raise an *issue* before the BIA is a jurisdictionally-fatal failure to exhaust an administrative *remedy* for purposes of 8 U.S.C. § 1252(d)(1), or simply raises the non-jurisdictional question whether review of that issue is precluded by the doctrine of administrative exhaustion. Compare Sultani v. Gonzales, 455 F.3d 878, 884 (8th Cir. 2006), with Frango v. Gonzales, 437 F.3d 726, 728-29 (8th Cir. 2006), and Etchu-Njang v. Gonzales, 403 F.3d 577, 581-84 (8th Cir. 2005). To further complicate matters, there is disagreement among our sister circuits on the related question whether a claim or issue not presented to the BIA, but considered by the BIA *sua sponte*, is jurisdictionally barred for failure to exhaust administrative remedies. Compare Amaya-Artunduaga v. U.S. Attorney General, 463 F.3d 1247, 1250-51 (11th Cir. 2006), with Sidabutar v. Gonzales, 503 F.3d 1116, 1118-22 (10th Cir. 2007). We conclude that we need not enter this thicket because the issue presented in this case can be resolved more narrowly.

To be eligible for asylum, an alien must prove that he is a "refugee," a person unable or unwilling to return to his own country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1158(b)(1), 1101(a)(42)(A). Withholding of removal is a narrower remedy; it bars removal only to a particular country. The statute that defines eligibility for withholding of removal uses language from the United Nations Convention Relating to the Status of Refugees, rather than the word "persecution." See 8 U.S.C. § 1231(b)(3)(A). But it is well-settled that eligibility under this statute requires proof "that it is more likely than not that the alien would be subject to persecution on one of the specified grounds" if removed to the country in question. INS v. Stevic, 467 U.S. 407, 429-30 (1984). This burden of proof "is more demanding than that for asylum." Alemu v. Gonzales, 403 F.3d 572, 576 (8th Cir. 2005). Therefore, "[a]n alien who fails to prove eligibility for

asylum cannot meet the standard for establishing withholding of removal." Turay v. Ashcroft, 405 F.3d 663, 667 (8th Cir. 2005).

In this case, the IJ denied both asylum and withholding of removal on the merits, based upon an adverse credibility finding and the lack of supporting documentation. Zine appealed that decision, arguing that he was eligible for asylum because he demonstrated past persecution and a well-founded fear of future persecution in Algeria on account of a protected ground. If that asylum argument failed, Zine had no hope of satisfying the more demanding standard for withholding of removal to Algeria. In addition, the IJ denied asylum on the alternative ground that Zine's application was untimely. He also appealed that ruling to the BIA. But he was ill-advised in not specifically appealing the denial of withholding of removal, because if the BIA affirmed the ruling that the asylum application was barred as untimely, it need only reach the merits of the persecution issue if reviewing the denial of withholding of removal. The BIA obviously recognized this oversight and, given the great emphasis on the merits of the persecution issue in Zine's appeal brief, addressed that issue by specifically affirming the denial of withholding of removal. We accept the agency's determination that the persecution issue was adequately exhausted as to both claims and therefore reach the merits of the withholding of removal denial. However, we caution practitioners that, if the BIA declines to grant relief from this oversight in a future case, judicial review of the withholding of removal claim may well be precluded for failure to exhaust.

Turning to the merits, we review the BIA's decision to deny withholding of removal under the deferential substantial evidence standard. See Menendez-Donis v. Ashcroft, 360 F.3d 915, 918-19 (8th Cir. 2004).[4] The agency's adverse credibility finding, like other factual determinations, is "conclusive unless any reasonable

[4]"Only the BIA order is subject to our review, including the IJ's findings and reasoning to the extent they were expressly adopted by the BIA." Fofanah v. Gonzales, 447 F.3d 1037, 1040 (8th Cir. 2006).

-7-

adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see Abdelwase v. Gonzales, 496 F.3d 904, 908 (8th Cir. 2007). "Credibility findings in particular are entitled to much weight because the IJ sees the witness testify and is therefore in the best position to determine his or her credibility." Fofanah, 447 F.3d at 1040. Accordingly, "we defer to that finding if it is supported by a specific, cogent reason for disbelief." Aden, 396 F.3d at 968 (quotation omitted).

The IJ supported the adverse credibility finding by explaining that Zine's account of detention and torture at the desert detention center was inconsistent with testimony about the timing of visits by his family and was uncorroborated except for facsimile copies of a release document and unspecific letters from friends and family addressed to Zine's attorney. Moreover, no evidence corroborated his testimony of subsequent arrests, or his purported fear that the government was looking for him for deserting the military, a claim that seemed inconsistent with his ability to leave the country without challenge. Moreover, the IJ found, Zine's testimony about his life after leaving Algeria was not credible. He presented no documentation regarding his three years in Turkey, and no support for his explanation why he did not apply for asylum in that country. Destroying his Algerian passport in Thailand and his fraudulent French passport in the United States while keeping a photocopy of his I-94 entry card struck the IJ as particularly incredible and raised the specter of many aliens fraudulently claiming entry as "Hafed Benchellali."

Zine argues that each of these reasons, standing alone, is inadequate support for the adverse credibility finding. But the issue is whether their cumulative weight is sufficient to provide a "specific, cogent reason for disbelief." After careful review of the record, and bearing in mind the IJ's superior ability to gauge a witness's demeanor while testifying, we conclude that Zine's testimony and limited supporting evidence were not so overwhelming as to compel any reasonable adjudicator to find that testimony credible. Therefore, the adverse credibility finding must be upheld. See Falaja v. Gonzales, 418 F.3d 889, 896-97 (8th Cir. 2005). When asylum, withholding of removal, and CAT claims are based on the same discredited testimony, "the adverse

credibility finding is fatal to all three claims." Fofanah, 447 F.3d at 1040. Accordingly, we deny the petition for review of the BIA's July 13, 2006, Order.

## II. The Order Denying Zine's Motion to Reconsider and Reopen

Zine married a U.S. citizen in August 2002, while the asylum-only proceeding was pending before the IJ. His wife filed a Form I-130 petition for an immediate relative visa in 2003. See 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154(a)(1)(A). The petition was pending when the IJ denied Zine's asylum application. The Department of Homeland Security approved the wife's petition while Zine's administrative appeal to the BIA was pending. After the BIA's adverse decision, Zine filed a motion to reopen and reconsider, arguing (1) the BIA erred in affirming the IJ's adverse credibility finding, and (2) the proceeding should be reopened so he may pursue adjustment of status based upon his wife's immediate relative visa. The BIA denied the motion. Zine petitions for judicial review of this second BIA order.

(1) Zine argues that the BIA abused its discretion in denying his motion to reconsider "the IJ's flawed credibility analysis." Because motions to reopen are disfavored, our review for abuse of discretion is highly deferential. See Esenwah v. Ashcroft, 378 F.3d 763, 765 (8th Cir. 2004), cert. denied, 544 U.S. 962 (2005). Here, Zine's motion to reconsider merely reiterated his prior attacks on the IJ's credibility analysis, and the motion to reopen was based on an additional document that was not newly discovered evidence and did not demonstrate that Zine is entitled to relief. The BIA did not abuse its discretion in concluding that Zine "failed to meet the 'heavy burden' of showing that a motion to reopen or to reconsider is warranted." Order of November 24, 2006, at p.1.

(2) Zine further argues that the BIA abused its discretion by refusing to reopen the asylum-only proceeding to allow him to apply for adjustment of status based on the grant of his wife's immediate relative visa petition. The BIA denied this relief on the ground that "adjustment of status is not available to aliens admitted under the Visa

Waiver Program." As we will explain, this assertion is so broadly worded that it may conflict with 8 U.S.C. § 1255(c)(4). However, we agree that Zine was not entitled to the relief he requested.

The VWP eliminates barriers to travel, stimulates tourism, and reduces the burden of processing visa applications by citizens of "countries whose nationals have traditionally abided by U.S. immigration law." H.R. Rep. No. 99-682(I), at 50 (1986), reprinted in 1986 U.S.C.C.A.N. 5649, 5654. But the Program includes safeguards to minimize abuses. To be admitted under the VWP, an eligible alien must travel to the United States on a round-trip ticket, may not stay more than ninety days, and must agree not to contest removal "other than on the basis of an application for asylum." 8 U.S.C. §§ 1187(a)(1), (a)(8), (b)(2). When an alien overstays the ninety-day period but wishes to apply for asylum, withholding of removal, and CAT relief, immigration officials issue an I-863 Notice of Referral to an IJ who then has exclusive jurisdiction to rule on the asylum application. This proceeding before the IJ is referred to as an asylum-only proceeding because, consistent with 8 U.S.C. § 1187(b)(2), "all parties are prohibited from raising or considering any other issues, including but not limited to issues of admissibility, deportability, eligibility for waivers, and eligibility for any other form of relief." 8 C.F.R. § 1208.2(c)(3)(i).

This regulation appears to resolve the issue in favor of the BIA's ruling. But Zine counters with two different arguments. First, although he entered the United States under the VWP, Zine is an Algerian, a "national" of a country that does not participate in the VWP. See 8 U.S.C. § 1187(a)(2). Because he was not eligible to enter under the VWP, Zine argues, he should not be bound by its restrictions on discretionary relief such as adjustment of status. This argument is without merit. The Attorney General's regulations expressly provide that an alien who enters under the VWP by "present[ing] fraudulent or counterfeit travel documents" will be removed without referral to an immigration judge unless he applies for asylum, in which case he "must be issued a Form I-863, Notice of Referral . . . for a proceeding in accordance with [8 C.F.R. § 1208.2]." 8 C.F.R. § 217.4(a)(1). The BIA strictly

enforces this provision. <u>See</u> <u>In re Kanagasundram</u>, 22 I & N Dec. 963, 964-65 (BIA 1999) (rejecting the government's request for expedited removal instead of an asylum-only proceeding). And properly so. If Zine's interpretation of the VWP were correct, ineligible aliens who fraudulently abuse the Program would receive the benefits of VWP entry but be free of the Program's restrictions. Thus, Zine is subject to the restrictions on asylum-only proceedings set forth in 8 C.F.R. § 1208.2(c)(3)(i).

Second, the adjustment of status statute provides that this relief is not available to an alien who entered under the VWP "other than an immediate relative" of a U.S. citizen. 8 U.S.C. § 1255(c)(4). Now that his wife's immediate relative visa has been granted, Zine argues, he is eligible for adjustment of status under 8 U.S.C. § 1255(a),[5] and therefore the BIA abused its discretion when it refused to reopen this proceeding to allow him to obtain that relief. We disagree.

Though Zine as an immediate relative may be eligible for adjustment of status, the relevant statutes and implementing regulations do not grant the BIA jurisdiction to adjust Zine's status in an asylum-only proceeding. The regulations grant immigration judges exclusive jurisdiction to consider the adjustment application of an alien "who has been placed . . . in removal proceedings." 8 C.F.R. § 1245.2(a)(1). But aliens admitted under the VWP are not eligible for removal proceedings, only asylum-only proceedings in which adjustment of status may not be sought. <u>See</u> 8 C.F.R. § 1208.2(c)(iv). Thus, under the regulations, a VWP alien who is ordered removed because he overstayed his ninety-day authorized visit and is referred to an asylum-only proceeding "has waived his right to contest that removal through an application for adjustment of status. . . . To conclude otherwise would frustrate Congress' intent in establishing the VWP, and would be contrary to the statutes and regulations governing an alien's right to an adjustment of status." <u>Ferry v. Gonzales</u>,

---

[5]We note, but do not pause to consider, that Zine may be ineligible for adjustment of status under § 1255(c)(4) because he was admitted under the VWP using fraudulent travel documents.

457 F.3d 1117, 1128 (10th Cir. 2006); accord Lacey v. Gonzales, 499 F.3d 514 (6th Cir. 2007). We agree with this interpretation of the statutes and regulations.

For these reasons, even if Zine had applied for adjustment of status prior to the conclusion of his asylum-only hearing, the IJ would not have had jurisdiction to consider that application. See Ferry, 457 F.3d at 1126-28; Lacey, 499 F.3d at 519. Indeed, at the second of the six hearings, the IJ clearly advised Zine that, "even if . . . the I-130 is approved, I still have no jurisdiction to consider an adjustment application" in this asylum-only proceeding. Thus, Zine had ample notice of this limitation on the IJ's jurisdiction, yet he did not object to being placed in the asylum-only proceeding.

As the IJ lacked jurisdiction to consider an adjustment of status application in this asylum-only proceeding, the BIA plainly did not abuse its discretion when it denied Zine's motion to reopen the proceeding for that purpose.[6]

We deny the petitions for review.

_____

---

[6]We need not consider what impact 8 U.S.C. § 1255(c)(4) may have on otherwise applicable procedures when an alien who entered under the VWP applies for adjustment of status *before* his or her authorized ninety-day visit has expired. Compare Freeman v. Gonzales, 444 F.3d 1031, 1035-37 (9th Cir. 2006), with Ferry, 457 F.3d at 1127 n.15.