# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1414

_____

Lidia Ramirez

*Petitioner*

v.

Jefferson B. Sessions, III, Attorney General of the United States

*Respondent*

_____

No. 17-2662

_____

Lidia Ramirez

*Petitioner*

v.

Jefferson B. Sessions, III, Attorney General of the United States

*Respondent*

_____

Petitions for Review of Orders of the
Board of Immigration Appeals

_____

Submitted: April 11, 2018
Filed: August 29, 2018

_____

Before BENTON, MELLOY, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

Lidia Ramirez, a native and citizen of Guatemala, seeks review of a final order of removal issued by the Board of Immigration Appeals ("Board"). The Board affirmed an immigration judge's ("IJ's") denial of her application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Ramirez also seeks review of a separate order of the Board denying her motion to reconsider or reopen. For the reasons set forth below, we deny both of Ramirez's petitions for review.

## I. BACKGROUND

The Department of Homeland Security ("DHS") detained Ramirez in July 2014 after she illegally entered the United States. When Ramirez expressed an intent to apply for asylum, DHS referred her to an asylum officer for a credible fear interview.

Ramirez told the asylum officer she feared a neighbor would kill her if she returned to Guatemala. Specifically, she said a man who lived near her in Guatemala frequently asked her to have sex, and she refused because she was married. In addition, she said she reported this neighbor to the police after he attempted to rape a local young woman, but the police did not arrest him. Ramirez believes he bribed the police. Ramirez said this same neighbor later sent two other men to confront her at knifepoint, demanding money and threatening to kill her. Ramirez told the asylum officer if she returned to Guatemala, her neighbor would kill her because she both refused his advances and reported him to the police. She said she could not move elsewhere in Guatemala because she had nowhere else to go, and she believed the police would not help her.

The asylum officer concluded Ramirez had a credible fear of "torture" and referred her case to an IJ for a removal proceeding under 8 U.S.C. § 1229a. DHS then served her with a Notice to Appear, charging her with removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I), which provides that immigrants are inadmissible if they do not possess a valid entry document when seeking admission.

After a series of continuances, her final hearing took place in March 2016 in Kansas City, Missouri. Ramirez submitted her asylum application (completed with the help of an attorney) and represented herself pro se. A new IJ first asked an interpreter to read Ramirez's entire asylum application back to her in Spanish. The IJ then asked if she understood what was read and if it was true and correct. Ramirez answered in the affirmative. The IJ also asked if everything in her credible fear interview, and in her application for asylum, was true and correct. Ramirez again answered affirmatively. The IJ proceeded to ask Ramirez a series of "Yes-or-No" questions about the specific reasons she feared returning to Guatemala based on her application. Ramirez answered "Yes" each time, reiterating she was afraid because her neighbor made sexual advances toward her and sent two men to extort money from her at knifepoint. When the IJ asked if "there is anything else that caused you to be afraid to return to Guatemala," Ramirez responded: "It's just that." The IJ then twice asked if Ramirez had anything else to say, to which she responded each time: "That's all."

The IJ issued a verbal ruling denying the application, stating Ramirez failed to meet her burden of proof for securing relief because the conduct she feared was "personal and a potential criminal act," but not "persecution" or "torture" necessary for securing asylum, withholding of removal, or CAT relief. The IJ then left the hearing to write a formal order and soon returned, giving Ramirez a multi-page written decision.

The IJ's written decision concluded that Ramirez failed to demonstrate either past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, as required to secure asylum. The IJ found that (a) "married women in Guatemala who are approached by men to have sex and declined such invitation" is too broad to be a "particular social group"; (b) Ramirez did not demonstrate significant harm caused by her neighbor's harassment and threat; and (c) she did not show her neighbor remained interested in her or would cause actual harm if she returned.

At this point, however, the IJ's written decision became muddled. In discussing Ramirez's claim for CAT relief, the IJ three times referenced Ramirez as a man who would be removed to "Mexico" instead of Guatemala. The decision also erroneously stated Ramirez "testified" that her other family members have not been harmed since "he left Mexico." The decision concluded that Ramirez failed to satisfy her burden that it is more likely than not she will be tortured "if returned to Mexico." In addition, the caption of the written decision charged Ramirez with violating the wrong section of the Immigration and Nationality Act (INA) (8 U.S.C. § 1182(a)(6)(A)(i), which renders inadmissible an alien present in the United States without having been admitted or paroled). The decision later noted the correct charge for seeking admission without a valid entry document.

Ramirez, at the time represented by counsel, appealed the IJ's decision to the Board, challenging mostly the errors in the IJ's written decision. In a written order, the Board (represented by a single member) stated it would "defer to the Immigration Judge's decision" and then denied relief in a three-page opinion. The Board acknowledged the IJ's errors but ultimately found them "to be no more than harmless error." It determined the "record as a whole" indicated the IJ was aware Ramirez is a woman from Guatemala. The Board then explained that the sexual advances and threat directed at Ramirez did not rise to the level of past persecution. It also concluded she lacked a well-founded fear of future persecution for similar reasons

-4-

discussed in the IJ's decision. The Board stated that by failing to establish eligibility for asylum, she could not satisfy her higher burden for establishing eligibility for withholding of removal. Finally, the Board found Ramirez ineligible for relief under the CAT, in part because she offered no evidence of torture beyond the harassment allegations underlying her other claims.

Ramirez timely petitioned this Court for review of the Board's order dismissing her appeal. Noting that her prior appellate counsel failed to extensively brief the issues in her original appeal to the Board, Ramirez also filed a motion to reopen or reconsider with the Board. She argued the IJ's hearing conduct violated procedural due process, and she further explained that the IJ's fact errors demonstrated a failure to provide individualized consideration. Ramirez based her motion on a 2009 statement by former Board Chairman Juan Osuna, who indicated that where an alien's prior counsel barely briefed a case, the alien can file a supplemental brief without alleging ineffective assistance of counsel. *See Practice Before the BIA*, 86 Interpreter Releases No. 30 (August 10, 2009) ("Osuna Statement").

The Board summarily denied the motion to reopen or reconsider, explaining that the motion either reiterated previous contentions or asserted arguments that were apparent at the time of the original appeal and could have been presented in the appeal brief. The Board also found the motion presented no new evidence that would justify reopening the case.

Ramirez timely appealed the Board's denial of her motion to reopen or reconsider. Ramirez asks that we remand her case for further consideration by the Board. We consolidated the two petitions on appeal.

## II. DISCUSSION

To establish eligibility for asylum, an applicant must show that he or she is "unable or unwilling to return to his or her country because of 'persecution or a well-

founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Esenwah v. Ashcroft*, 378 F.3d 763, 766 (8th Cir. 2004) (quoting 8 U.S.C. § 1101(a)(42)(A)). Eligibility for withholding of removal requires an applicant to show "his or her life or freedom would be threatened in the proposed country of removal on account of" the same statutory grounds. 8 C.F.R. § 1208.16(b). The applicant must demonstrate "it is more likely than not" he or she would be subject to persecution on one of the qualifying grounds, *see Zine v. Mukasey*, 517 F.3d 535, 540 (8th Cir. 2008), a burden of proof "more demanding than that for asylum." *Id.* (quoting *Alemu v. Gonzales*, 403 F.3d 572, 576 (8th Cir. 2005)); *see also* 8 U.S.C. § 1231(b)(3)(A). To establish eligibility for CAT relief, an applicant must show "it is more likely than not" that "he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2).

This Court has jurisdiction to review "constitutional claims or questions of law raised upon a petition for review" of a removal order. 8 U.S.C. § 1252(a)(2)(D). "The [Supreme] Court [has] held that the appeal of the [Board] order affirming the IJ's order and the appeal of the denial of the motion for reconsideration must be treated as 'two separate petitions filed to review two separate final orders.'" *Esenwah*, 378 F.3d at 765 (quoting *Stone v. I.N.S.*, 514 U.S. 386, 405 (1995)). Therefore, we consider each order in turn below.

## A. The Order Affirming the IJ's Decision

Ramirez raises three challenges in her appeal from the Board's initial order: (1) the IJ's hearing conduct violated procedural due process; (2) the IJ's written decision turned on factual and legal errors; and (3) the Board's order improperly "defer[red]" to the IJ's allegedly erroneous decision.

## 1. The Hearing

Turning first to the due process challenge, Ramirez argues the IJ conducted an unduly swift hearing and thereby failed to explore all the relevant facts. We review procedural due process challenges de novo, "as the question of whether an immigration hearing violates due process is a purely legal issue." *Bracic v. Holder*, 603 F.3d 1027, 1032 (8th Cir. 2010); *see also* 8 U.S.C. § 1252(a)(2)(D).

As a preliminary matter, the United States Attorney General ("the Government") argues Ramirez failed to exhaust this claim before the Board. This Court "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). Therefore, "[i]f a petitioner fails to raise a particular issue when he appeals to the Board," the petitioner has not exhausted his administrative remedies with respect to that issue. *Ateka v. Ashcroft*, 384 F.3d 954, 957 (8th Cir. 2004). This Court has ruled it lacks jurisdiction over unexhausted claims for a violation of procedural due process. *Gonzales v. Cherthoff*, 454 F.3d 813, 816 (8th Cir. 2006). Ramirez counters that while her brief before the Board focused mostly on alleged errors in the IJ's written order, it also "plainly raised" the due process issue by expressly stating she did not receive a fair hearing.

We conclude the issue is exhausted, particularly given that the Board's order specifically determined Ramirez "received a fundamentally fair hea[r]ing" and "has not shown any resulting prejudice." Because Ramirez argued she received an unfair hearing and the Board "specifically affirm[ed]" the validity of that hearing, "[w]e accept the agency's determination that the [] issue was adequately exhausted . . . and therefore reach the merits" of Ramirez's due process claim. *See Zine*, 517 F.3d at 540.

Arriving at the merits, "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S.

292, 306 (1993). An immigration judge must "receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses" during a removal proceeding. 8 U.S.C. § 1229a(b)(1). The alien must be examined under oath on the basis of his or her application and must be allowed to present additional evidence and witnesses on their own behalf. *Id.* § 1229a(b)(4); 8 C.F.R. § 1240.11(c)(3)(iii). Furthermore, this Court has recognized that when an alien appears pro se, the IJ must "fully develop the record." *Al Khouri v. Ashcroft*, 362 F.3d 461, 464 (8th Cir. 2004) (quoting *Agyeman v. I.N.S.*, 296 F.3d 871, 877 (9th Cir. 2002)). Considering the pro se alien's likely lack of legal knowledge, the difficulty of navigating immigration law, and the possibility of expulsion upon failure to do so successfully, we have recognized "it is critical that the IJ 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" *Id.* at 465 (quoting same).

Ramirez argues the IJ should have asked "a basic set of questions above and beyond whether the statements in the application are true," because the Application for Asylum and Withholding of Removal (Form I-589) does not specifically ask the applicant to state, among other things, the particular social group to which he or she belongs. She argues the IJ did not ask *why* her neighbor allegedly sent two men to threaten her with a knife, a key element of the asylum claim. For support, she points to prior Board decisions stating that an IJ must ordinarily conduct "a full oral examination of the applicant" beyond merely asking whether information in the application is true and correct. *See Matter of Fefe*, 20 I&N Dec. 116, 118 (BIA 1989); *Matter of E-F-H-L-*, 26 I&N Dec. 319, 322 (BIA 2014). Finally, she invokes this Court's decision in *Al Khouri*, which found a due process violation where an IJ limited the asylum applicant's ability to elaborate on his application and then found his lack of elaboration to undermine his credibility. *Al Khouri*, 362 F.3d at 465.

We are not persuaded by these arguments. Unlike the respondents in *Matter of Fefe* and *Matter of E-F-H-L-*,[1] here Ramirez actually answered questions about her case at the hearing. The IJ placed her under oath. An interpreter read the contents of her asylum application back to her in Spanish. The IJ asked if the contents of her application were true and correct. The IJ then asked a series of relevant fact questions, including whether she "refused [her neighbor's sexual advances], and he sent two men to threaten [her] with a knife and demanded the money." Ramirez answered "Yes," to this and each fact question. Given the IJ's "broad discretion to control the manner of interrogation to get at the truth," *see Shoaira v. Ashcroft*, 377 F.3d 837, 843 (8th Cir. 2004), we do not find invalid the IJ's "Yes-or-No" fact questions getting to the crux of Ramirez's claims. *See also* 8 C.F.R. § 1240.1(c) (directing IJs to "regulate the course of the hearing").

Furthermore, the IJ did not curtail Ramirez's testimony or prevent her from telling her whole story. *See Al Khouri*, 362 F.3d at 465, 467. Unlike in *Al Khouri*, Ramirez testified to facts which aligned essentially to those alleged in her credible fear interview and asylum application. Then the IJ asked Ramirez three open-ended questions allowing her an opportunity to elaborate. Ramirez declined each time. We do not find this to be the type of hearing conduct that violates due process.

Even if the hearing contained fundamental errors, it is axiomatic in this Circuit that an alien's due process claim must demonstrate both a fundamental procedural

---

[1]The current relevance of these decisions is questionable. The regulations applied in *Matter of Fefe* were later rescinded and replaced. Further, *Matter of E-F-H-L-*, which reaffirmed *Matter of Fefe*, was vacated after the petitioner withdrew his application. *See Matter of E-F-H-L-*, 27 I&N Dec. 226 (U.S.Atty.Gen. 2018), Interim Final Decision 3917, 2018 WL 1202974. However, we do not assess their viability as neither decision applies in this case.

error *and* prejudice. *E.g.*, *Rubio v. Sessions*, 891 F.3d 344, 351 (8th Cir. 2018).[2] To establish prejudice, Ramirez must show "the outcome of the proceeding may well have been different had there not been any procedural irregularities." *Tun v. Gonzales*, 485 F.3d 1014, 1026 (8th Cir. 2007).

Ramirez argues the brevity of the hearing "led the IJ" to conclude Ramirez failed to prove "why the attackers had targeted her" and "prevented [her] from fully developing the claim on her own." But the IJ gave her repeated opportunities to expound on her claim, and Ramirez declined. Even on appeal, Ramirez has failed to explain the evidence she might have offered had the IJ asked further questions. *See Bracic*, 603 F.3d at 1033 (noting asylum applicant "has not shown how the procedural error would have changed the outcome of his case because he has offered no new evidence [and has] advanced [no] new issues that would have established his entitlement to asylum or withholding of removal"); *Ramirez v. Holder*, 489 F. App'x. 140, 142 (8th Cir. 2012) (per curiam) (unpublished). Ramirez has shown no prejudice here. Her due process claim necessarily fails.

## 2. The IJ's Written Decision

Ramirez next argues the IJ issued a "cookie cutter" written decision that also violated her due process rights. She alleges the errors in the IJ's opinion—referring to her as a man from Mexico, falsely claiming she "testified" that her family has been unharmed "since he left Mexico" (and giving that "fact" analytical weight), and

---

[2]Ramirez argues she need not show prejudice from any violations of her constitutional right to a fair deportation hearing. We acknowledge that several other Circuits have indicated as much. *See, e.g.*, *Leslie v. Attorney Gen. of U.S.*, 611 F.3d 171, 175–80 (3d. Cir. 2010), *cited in Puc-Ruiz v. Holder*, 629 F.3d 771, 780 (8th Cir. 2010). However, we find Ramirez failed to exhaust this issue before the Board. Thus we do not consider it here. *See Muiruri v. Lynch*, 803 F.3d 984, 987 n.1 (8th Cir. 2015).

referencing an erroneous deportation charge in the decision's caption—show the IJ failed to give individualized consideration to her case.

"Because the [Board's] decision is the final decision of the agency, it is the subject of our review. . . . To the extent, however, that the [Board] adopted the findings or reasoning of the IJ, we also review the IJ's decision as part of the final agency action." *Falaja v. Gonzales*, 418 F.3d 889, 894 (8th Cir. 2005).

We are troubled by the IJ's errors here. Given the IJ's brief recess from the hearing to write her four-page decision, these errors indicate a reliance on boilerplate language from another person's case—something this IJ has done before. *See Paramasamy v. Ashcroft*, 295 F.3d 1047, 1050-51 (9th Cir. 2002) (IJ's decision twice referred to female asylum applicant as a man and made findings about her demeanor that were almost identically worded to demeanor findings in two separate cases). Federal immigration law is clear that the IJ's decision "shall be based only on the evidence produced at the hearing," including the respondent's asylum application. 8 U.S.C. § 1229a(c)(1)(A). While IJ decisions may include "standard verbiage setting forth a well-accepted legal principle, such as a standard of review," *see Paramasamy*, 295 F.3d at 1052, the misappropriation of facts can indicate an IJ "failed to provide the requisite individualized evaluation." *Id*. at 1051.

However, despite our concerns about boilerplate language, we do not find that the errors in this case reveal a failure to provide individualized evaluation. Notably, the errors occurred in the IJ's analysis for CAT relief—after having concluded Ramirez failed to qualify for asylum and withholding of removal. The IJ based these earlier conclusions on the fact Ramirez "testified and wrote in her application that a neighbor wanted to have sex with her, she refused and he sent two men to threaten and extort from her." The IJ also relied on the fact Ramirez "testified that she fears returning to Guatemala, because she fears the neighbor . . . may [send] the same two men . . . to kill her."

Further, as discussed below, the Board's decision correctly found the IJ's CAT analysis unnecessary. *See La v. Holder*, 701 F.3d 566, 573 (8th Cir. 2012); *see also Reyes-Morales v. Gonzales*, 435 F.3d 937, 943 (8th Cir. 2006) (concluding the IJ's failure to consider claim for humanitarian asylum was corrected by the Board and therefore harmless). We thus turn to that decision now.

## 3. The Board's Decision

Ramirez argues the Board's order adopted the IJ's errors and failed to exercise independent judgment, as indicated by its statement that "[w]e have considered all of the respondent's arguments on appeal and *defer* to the Immigration Judge's decision." (emphasis added).

"This court reviews decisions on asylum, withholding of removal, and CAT protection under the substantial evidence standard." *R.K.N. v. Holder*, 701 F.3d 535, 537 (8th Cir. 2012). Thus, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Additionally, we review an agency's legal determinations de novo, "but with great deference to the [Board's] interpretations of immigration statutes and regulations." *R.K.N.*, 701 F.3d at 537. *But cf. Pereira v. Sessions*, 138 S. Ct. 2105, 2112-13 (2018) (noting, while reversing an opinion applying the *Chevron* framework, "the Court need not resort to *Chevron* deference, as some lower courts have done, [where] Congress has supplied a clear and unambiguous answer to the interpretive question at hand"). The Board must exercise "independent judgment" in "determining the cases coming before [it]," 8 C.F.R. § 1003.1(d)(1)(ii), including a review of fact findings for clear error and a de novo review of questions of law, judgment, or discretion. *Id*. §§ 1003.1(d)(3)(i), (ii).

The Government argues the Board's decisions are "entitled to a presumption of regularity." *Averianova v. Holder*, 592 F.3d 931, 936 (8th Cir. 2010) (quoting *Makonnen v. I.N.S.*, 44 F.3d 1378, 1384 (8th Cir. 1995)). It also argues the Board expressly considered the IJ's errors and found them harmless here.

Ultimately, we agree with the Government. While the Board's use of the word "defer" is regrettable given the IJ's errors, it is not reversible. The rest of the Board's order shows it actively analyzed Ramirez's arguments on appeal and reached its own conclusion—without adopting the IJ's errors. First, the Board stated it would apply clear-error review of the IJ's factual findings and de novo review over issues of law, judgment, or fact. This level of review is not blind deference. Next, the Board expressly noted that while the IJ included the wrong removal charge in the caption of her decision, the IJ cited the proper charge in the body of her analysis. The Board properly found the IJ's mistake harmless. *See Reyes-Morales,* 435 F.3d at 943 (concluding the Board's reference to incorrect asylum regulation was "clerical" and ultimately "harmless").

Additionally, the Board determined that a review of the record "as a whole" showed the IJ was aware Ramirez is a woman from Guatemala, not a man from Mexico. It found the IJ's mistakes in this regard to be "harmless error or a mistake in transcription of the record." The Board stated it "regrets the defects in the proceedings below." Therefore, we disagree with Ramirez's contention that the Board simply "rubber-stamped" the IJ's errors.

In affirming the IJ's denial of asylum, the Board applied its own reading of a number of Eighth Circuit decisions, including the principle that "persecution" for purposes of asylum "is an extreme concept" which does not include "incidents of harassment" and "unfulfilled threats of injury." *See Tegegn v. Holder*, 702 F.3d 1142, 1144 (8th Cir. 2013). The Board cited the *uninfected* portions of the IJ's decision in finding no clear error that Ramirez's claim hinged on the sexual advances by her

neighbor in Guatemala and his threat for her refusals. Thus, we conclude the Board's decision that such conduct does not rise to the level of "persecution" was based on independent judgment and substantial evidence.

The same is true of the Board's decision that Ramirez failed to establish a well-founded fear of future persecution. The Board again applied several Eighth Circuit decisions, including the rule that an asylum applicant lacks a well-founded fear if they can avoid persecution by relocating within their native country or if their fear is too speculative. *See Castillo-Gutierrez v. Lynch*, 809 F.3d 449, 452 (8th Cir. 2016). Citing to the portion of the IJ's analysis that found Ramirez's "fears [of] returning to Guatemala" rooted only in her neighbor's previous advances and threats, the Board concluded Ramirez failed to show that her neighbor remains interested in pursuing her, that she lacks the ability to move elsewhere in Guatemala, and that her fears are not too speculative or based on general criminal activity. We find these conclusions, too, were based on independent judgment and substantial evidence.[3]

Because "[a]n alien who fails to prove eligibility for asylum cannot meet the standard for establishing withholding of removal," *Turay v. Ashcroft*, 405 F.3d 663, 667 (8th Cir. 2005), we also conclude the Board correctly found Ramirez per se ineligible for withholding of removal. Finally, the Board found Ramirez ineligible for relief under the CAT *without* relying on the IJ's error-ridden CAT analysis. Rather, the Board ultimately found CAT analysis unnecessary in the absence of any evidence

_____

[3]Ramirez also argues the IJ erroneously ruled that fear of a "personal and a potential criminal act" lacks the nexus to a protected ground for relief. However, even if the Board adopted this conclusion as its own (*e.g.*, by stating that "fear of general criminal activity" is "not sufficient" for relief here), this Court has recognized a distinction in this context between "simple criminal intent" and bias on the basis of a protected statutory ground. *See Ming Ming Wijono v. Gonzales*, 439 F.3d 868, 873 (8th Cir. 2006).

-14-

Ramirez would be tortured for reasons unrelated to her asylum claim. We agree. *See La*, 701 F.3d at 573.

In the end, the Board's order disavowed the IJ's errors and exercised the requisite independent judgment supported by substantial evidence. We therefore deny the petition for review of the Board's order affirming the IJ's decision.

## B. The Order Denying the Motion to Reopen or Reconsider

After appealing her original petition to this Court, Ramirez filed a "Motion to Reopen or Reconsider" with the Board seeking remand for a new hearing. It was eventually denied. A motion to reconsider must contest "errors of law or fact in the previous order," and a motion to reopen for an additional hearing must state "new facts" and "be supported by affidavits or other evidentiary material." 8 U.S.C. §§ 1229a(c)(6)(C) & (7)(B); *see also* 8 C.F.R. §§ 1003.2(b)(1) & (c)(1). "We review decisions of the Board denying motions to reopen or reconsider for abuse of discretion." *Habchy v. Gonzales*, 471 F.3d 858, 861 (8th Cir. 2006). "This court may find an abuse of discretion where 'a decision is without rational explanation, departs from established policies, invidiously discriminates against a particular race or group, or where the agency fails to consider all factors presented by the alien or distorts important aspects of the claim.'" *Id.* at 861-62 (quoting *Hernandez-Moran v. Gonzales*, 408 F.3d 496, 499 (8th Cir. 2005)). "This standard is considerably more deferential" to the Board than our review of the underlying order. *Esenwah*, 378 F.3d at 765.

We hold the Board acted well within its discretion here. Indeed, Ramirez's motion largely elaborated on the same issues raised in her original appeal. We acknowledge she raised new arguments regarding her due process claim, including that she need not show prejudice resulting from any hearing defects. We also note she grounded her motion in the aforementioned Osuna Statement, which she argued should

allow her "to apprise the [Board] of these additional issues . . . ." However, several other Circuits have held "that the office of a motion to reconsider in an immigration case, under current law, is ordinarily limited to the consideration of factual or legal errors in the disposition of issues *previously* raised." *Martinez-Lopez v. Holder*, 704 F.3d 169, 172-73 (1st Cir. 2013) (emphasis added) (collecting cases). We agree. Further, Ramirez did not support her motion with new evidentiary material. Therefore, the Board was well within its discretion in denying her motion to reopen or reconsider.

## III. CONCLUSION

For these reasons, we deny both of Ramirez's petitions for review.

_____